THE SOUTH CHICAGO CITY RAILWAY COMPANY

*v.*

FRANK T. KINNARE, Admr.

*Opinion filed June 23, 1905—Rehearing denied October 11, 1905.*

1. PLEADING—*what is not a statement of different causes of action.* If different counts charge the same acts of negligence by the defendant from which the cause of action arose, they do not state different causes of action by reason of the fact that the mode or manner in which such negligence caused the injury is differently stated in each count.

2. NEGLIGENCE—*one placed in sudden peril is not bound to exercise the highest degree of care.* The law does not require that one placed in sudden peril shall exercise the highest degree of self-possession, coolness and skill, but only such as an ordinarily prudent and careful person would exercise in like situation and under like circumstances.

3. SAME—*whether deceased was guilty of contributory negligence is a question of fact.* Whether the deceased, under the influence of great fear when placed in sudden peril, so conducted himself as to incur the imputation of contributory negligence is to be determined by the jury as a question of fact.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN L. HEALY, Judge, presiding.

JAS. W. DUNCAN, and C. LEROY BROWN, for appellant.

WING & WING, and JAMES C. McSHANE, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the ground that servants of the appellant company negligently caused the death of Paul Christensen, the appellee, as administrator of his estate, recovered in the circuit court of Cook county a judgment in the sum of $5000. The Appellate Court for the First District affirmed the judgment, and the cause is here on a further appeal.

After the expiration of more than two years from date of the alleged negligence the appellee presented an additional count to his original declaration. The appellant company interposed a plea of the Statute of Limitations, to which a demurrer was sustained,—erroneously, as it insists. The original declaration contained one count. The negligence alleged therein was, that "the defendant, through certain of its servants then and there in charge and control of one of its said electric street cars being operated by it upon said street railway, as aforesaid, then and there so negligently, carelessly and improperly ran, managed and operated said street car that said street car thereby then and there ran against and struck the said Paul Christensen and knocked him off his bicycle upon the ground, and he was thereby then and there so seriously and permanently injured that he died, as a result of his said injuries, a short time afterwards." The negligence charged in the additional count was, that the appellant company "so negligently, carelessly and improperly ran, managed and operated said street car, that as a direct result and in consequence thereof the said Paul Christensen was brought in collision and contact with said street car and was thereby then and there knocked off his said bicycle onto the ground there, and was thereby then and there so seriously injured that he died as a result of his said injuries." The negligence charged in the original count and that charged in the additional count are the same, namely, the negligent, careless management and operation of the street cars. The mode or manner in which such alleged negligence caused the death of appellee's intestate is somewhat differently stated. The cause of action is the thing done or omitted to be done from which the right of action arose, (*Swift & Co.* v. *Madden,* 165 Ill. 41; *Illinois Central Railroad Co.* v. *Campbell,* 170 id. 163;) and as to this the allegations of the original and additional counts are not different. There was no error in sustaining the demurrer to the plea of the Statute of Limitations.

The refusal of the trial court to instruct the jury, as requested by the appellant company, to return a peremptory verdict in its favor·is urged as ground of reversal.

On the 24th day of May, 1896, at about two o'clock in the afternoon, the deceased, a man aged about thirty-six years, and one Peter Brask, a relative, were riding their bicycles northward along the roadway on the east side of Stony Island avenue, in the city of Chicago.· This avenue runs north and south, and the appellant company maintained a double line of street car tracks in and along the avenue. A horse drawing a buggy was being driven south on the roadway on the east side of the avenue, and Brask, who was· riding slightly in advance of the deceased, turned to the right in order to pass between the buggy and the curb of the roadway. The deceased turned to the left, and while he was on the west side of the buggy and Brask to the east thereof, the buggy being between them, a train of street cars, consisting of a motor car and a trailer, which was operated and controlled by employees of the appellant company,· was driven at a high rate of speed northward along the east track in the avenue and passed them. The bicycle on which the deceased was riding came in contact with the side of one of the cars and he was thrown from his bicycle to the pavement of the street and sustained injuries which resulted in his death some days later.

The collision occurred between Sixty-ninth and Seventieth streets and about fifty feet north of Sixty-ninth place, which intersects Stony Island avenue on the western side thereof. The space between the eastern rail of appellant's track and the curb of the street was seventeen feet. Two feet of this space·next immediately east of and adjoining the rail on the east was filled with cinders and slag and was slightly lower than the roadway of the street, from which it was divided by a wooden plank or curb. The roadway of the street between the cinders and the curb was of a width of

not exceeding fifteen feet and was paved with wooden blocks. The buggy was moving along the middle of this roadway. The sides of the cars of appellant's train extended, as variously estimated, from sixteen and one-half to eighteen inches over the cinders and slag. The space between the buggy and the sides of the cars was about five feet. The deceased was in this narrow space when the train of appellant's cars dashed along the track at a speed of from twelve to fifteen miles per hour. The evidence fully justified the view that neither of the bicyclists knew the train was in their rear. No warning was given of the approach of the train nor was the speed of the train slackened in any degree. The bicyclists, when within ten or fifteen feet of the buggy, turned to the right and left, respectively, and the appellant's train was then from one hundred and fifty to two hundred feet in their rear. The train, if moving at the rate of twelve miles per hour, would run about seventeen feet per second. Witnesses, some of whom were passengers on the train and others who were standing on the sidewalk to the rear of the bicyclists, saw and appreciated the perilous position in which the deceased would be placed by the on-coming train, and the jury were warranted in believing that the motorneer, had he exercised ordinary care, would have realized that unless warning should be given of the approach of the train or the speed thereof slackened, the deceased would be placed in a position of great danger in the narrow space between the train and the buggy. The court could not declare, as matter of law, that the deceased was guilty of contributory negligence, for the reason the evidence tended to show he did not know that the train was approaching and did not go or intend to go on the track, nor on the ground that the deceased became excited and frightened and did not exercise proper skill in endeavoring to extricate himself from the perilous place in which he found himself. There was testimony tending to show that while between the train and the buggy the deceased put his hand on the side of the motor car, and that this

caused his wheel to "wobble" and to come in contact with the trailer, which struck him and threw him to the surface of the street. But this act of the deceased could not be deemed contributory negligence as matter of law. What course should have been expected of an ordinarily prudent man under such circumstances was a question of fact. The law does not demand that one in a place of danger shall exercise the highest degree of self-possession, coolness and skill, but only such as an ordinarily prudent and careful person would exercise in the like situation and under like circumstances. (3 Thompson on Negligence, secs. 3025, 3026.)

Thirty instructions, which cover more than twelve pages of the printed abstract, were given as asked by the appellant company. One instruction requested in its behalf was refused. This instruction read as follows:

5. "The court instructs the jury that there can be no recovery against a party for merely frightening or alarming the person injured, and if you believe, from the evidence, that Christensen was injured solely by reason of being frightened or alarmed just before his bicycle came in contact with defendant's car, then you must find the defendant not guilty, even if you believe, from the evidence, that the defendant, by its servants, produced such fright or alarm on his part."

Instructions Nos. 28 and 30 given at the request of the appellant company treated of fright and alarm of the deceased and his consequent conduct as an element of the case, and declared the law on that subject fully and completely. Instruction No. 28 is as follows:

"If you believe, from the evidence, that the plaintiff became frightened or alarmed or confused just before coming into collision with defendant's car on account of getting suddenly into a position of peril, then such sudden peril will not excuse him for a failure, if there was any, to exercise ordinary care, if you believe, from the evidence, that he brought himself into such position of peril by reason of his own negligence, if he was negligent, or by reason of running the risk

of an obvious and serious danger merely to avoid inconvenience."

Instruction No. 30 occupies a full printed page of the abstract, and because of its length is not here set forth. It declared it to be the duty of the deceased to conduct himself with that coolness and presence of mind that might be expected to be exercised by men of ordinary coolness and prudence under like circumstances.

It is urged that neither the original declaration nor the additional count specifies a charge of negligently producing fright and alarm on the part of the deceased, and that for that reason the court committed error in refusing instruction No. 5. The charge in the pleading is, that the servants of the appellant company negligently placed the deceased in a position of great peril and that by reason of such negligence he received his injuries, and that he exercised ordinary care for his safety. His conduct while in a position of danger was a matter of evidence,—not of specific allegation of pleading. Whether, under the influence of sudden fear, he so conducted himself as to incur the imputation of contributory negligence was to be determined by the jury as a question of fact and did not arise as a matter of pleading.

Instruction No. 1 given at the request of the appellee was as follows:

"The court instructs the jury that ordinary care, as mentioned in these instructions, is that degree of care which an ordinarily prudent person, situated as the deceased was before and at the time of the accident, would exercise for his own safety."

As a criticism upon this instruction it is urged that "it assumes that an ordinarily prudent and cautious person might find himself in the situation that the plaintiff was in at the time of the accident, and assumes that he was not guilty of contributory negligence in being in the position in which he found himself at the time of the injury." We see nothing in the instruction from which any such assumption is indicated.

The instruction fairly directed the minds of the jury to the acts of the deceased connected with his going to the left of the buggy and bringing himself into the situation or position in which he found himself at the time he was injured, as well as his conduct while in such position or situation. There is nothing in the instruction which would lead the jury to infer that if deceased exercised due care in his endeavors to avoid injury or extricate himself from a position of danger plaintiff might recover, regardless of whether deceased had by his own negligence brought himself into such position of peril. Instruction No. 11 given at the instance of the appellant company so fully explained the meaning to be given by the jury to the expression found in any of the instructions that the deceased was required to use "ordinary care at the time of the injury," that it would be wholly unjustifiable to suppose that any improper inference could have arisen in the minds of the jury. Instruction No. 11 is as follows:

"When the court instructs the jury that the plaintiff can not recover unless Christensen was in the exercise of ordinary care at the time of the injury, the court means that Christensen was required to exercise such care for his own safety not only at the precise time of the injury, but during the time and circumstances preceding the injury as well; and if you believe, from the evidence, that he failed to exercise ordinary care for his own safety in getting into the position he was in when injured it will be your duty to find for the defendant, the same as if he failed to exercise ordinary care at the precise instant of the injury."

We have carefully considered the complaint that counsel for appellee, in the trial court, conducted himself improperly in the course of the examination of the witnesses and indulged in improper argument in addressing the jury, but we do not find anything which would suffice to justify the view that the cause of appellant was thereby unduly prejudiced.

The declaration herein was filed January 7, 1897. The case has been thrice tried before a jury, and nothing is here

urged sufficient to show that the litigation should be further prolonged.

The judgment of the Appellate Court is free from error, and is affirmed.          *Judgment affirmed.*