**Maggie Kennedy, Administratrix, Defendant in Error, v. Walter L. Ross, Receiver, Plaintiff in Error.**

1. MASTER AND SERVANT, § 782*—*when instruction on contributory negligence of railroad trackwalker is erroneous.* In an action for the wrongful death of a railroad trackwalker, killed by a train while crossing a trestle, it is erroneous to instruct that the deceased was not guilty of contributory negligence if he exercised reasonable care in attempting to escape from the trestle, disregarding evidence showing that the deceased heard and knew of the approaching train and debated the propriety of entering upon the trestle.

2. MASTER AND SERVANT, § 816*—*when instruction on contributory negligence of trackwalker is insufficient.* The words "At the time of the injury," used in an instruction on contributory negligence, are not broad enough to include the action of the deceased railroad trackwalker in venturing upon the trestle, where they are

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

further limited to what the deceased did while on the trestle in attempting to escape the approaching train.

3. Master and servant, § 98*—*what is effect of contributory negligence in action under Federal Employers' Liability Act.* Although contributory negligence is not a bar to an action under the Federal Employers' Liability Act for wrongful death of a railroad employee, it is material on the question of damages.

4. Death, § 73*—*when instruction on damages for wrongful is erroneous.* In an action under the Federal Employers' Liability Act for the wrongful death of a railroad trackwalker, an instruction on the measure of damages is faulty if it fails to limit the amount of recovery to the present cash value of the future benefits of which the beneficiaries are deprived.

5. Master and servant, § 98*—*what law governs as to damages in actions under Federal Employers' Liability Act.* The question of the proper measure of damages in cases arising under the Federal Employers' Liability Act must be settled according to principles of law administered in the federal courts.

Error to the Circuit Court of Fayette county; the Hon. William B. Wright, Judge, presiding. Heard in this court at the October term, 1918. Reversed and remanded. Opinion filed April 12, 1919.

C. E. Pope, for plaintiff in error; Charles A. Schmettau, of counsel.

Wiley & Morey and Melvin Wright, for defendant in error.

Mr. Justice Boggs delivered the opinion of the court.

Plaintiff in error, the receiver of the Toledo, St. Louis and Western Railroad Company, seeks to reverse a judgment for $3,000, rendered against him in the Circuit Court of Fayette county, in an action on the case, to recover damages for the death of Jacob N. Kennedy, a trackwalker employed by him as such receiver.

The declaration consists of seven counts, all of which allege that said Jacob N. Kennedy, the deceased, was an employee of plaintiff in error at the time of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

his death and that plaintiff in error was a common carrier, engaged in interstate commerce at the time of the accident, and that Kennedy was also so engaged and in the exercise of due care for his own safety.

The first count alleges that the servants and agents of plaintiff in error saw, or by the use of proper care could have seen, Kennedy on the trestle or bridge on which he was walking at the time he was struck by plaintiff in error's train, and that, by reason of the failure so to do, Kennedy was struck and received the injury from which he died, and further charges the operation of plaintiff in error's train at a high and dangerous rate of speed.

The second count alleges the negligent driving of the engine of said train, the failure to keep a proper lookout and failure to give proper signals, and to stop the train in time to avoid injuring said deceased, etc.

The third count alleges that it was the duty of plaintiff in error through his servants to give warning by blowing the whistle or ringing the bell on said engine, and charges a failure so to do, and alleges the running of the train at a high and dangerous rate of speed, etc.

The fourth count charges that it was the duty of plaintiff in error to have equipped his engine with a sufficient headlight, alleging failure so to do, and a failure to keep the same properly lighted.

The fifth count charges that it was the duty of plaintiff in error through his agents to stop the train when Kennedy's red light was displayed, and a failure so to do. The sixth count alleges it was the duty of the receiver, through his agents, to inform said train crew of Kennedy's presence on said track in the performance of his duty as a trackwalker and alleges a failure so to do.

The seventh count charges negligence generally in the operation of the train.

At the time of the accident, Walter L. Ross was re-

ceiver of the Toledo, St. Louis and Western Railroad
Company and operated said road and was a common
carrier engaged in interstate commerce. Kennedy, at
the time he was killed, was an employee, engaged in
interstate commerce, and it was so stipulated on the
trial.

The record discloses that on May 30, 1917, there had
been a local rainstorm in the vicinity of Ramsey, Illi-
nois, and the section foreman, at about 7:30 p. m., re-
quested one Lambert and defendant in error's intes-
tate to walk eastward over the track from Ramsey for
the purpose of giving signals or warning to trainmen
if the track was found in a dangerous condition at any
point on this section. Said parties were furnished
with torpedoes and two lanterns, one with a red globe
and one with an ordinary globe. The red light was to
be displayed in the event a dangerous condition was
discovered or torpedoes were to be placed on the track
according to railroad rules to warn on-coming trains.

The record discloses that according to schedule a
through passenger train going east should pass a local
passenger train at Ramsey at 8:00 p. m., going in the
same direction, and that after about 10 minutes said
local passenger should proceed east. The record also
discloses that at this time Lambert and defendant in
error's intestate were at a trestle some 2 or 3 miles
east of Ramsey. This trestle was about 300 feet long,
and as they were approaching the same they listened
and heard a train coming but could not determine its
distance, but knew that it had left Ramsey coming
east. After some discussion they came to the conclu-
sion they would have time to cross the trestle and
proceeded to do so. After they had gotten about one-
third way across, on looking back, they saw the head-
light of the local passenger. Lambert testified that
they were of the opinion that they would have time to
get across the bridge and that they began to run. Lam-
bert testified that he saw they would not be able to get

across and advised defendant in error's intestate to jump; that he, himself, jumped upon a stringer along said bridge and the train passed by without injuring him. Defendant in error's intestate was struck, knocked from the bridge and died shortly thereafter.

Lambert further testified that he and Kennedy kept their red light hid under their coats so as not to stop the train. The engineer in charge of the train said he saw two white lights and slackened his speed until he saw the lights pass from the south side to the north side of the track and he then concluded the persons carrying the same had gotten onto the dump at the end of the bridge and he then increased his speed. As the engineer passed Lambert, he saw the red light, stopped the train, backed up and learned that Kennedy had been injured.

Plaintiff in error urges as a ground for the reversal of the judgment in this case, first, that there is no proof of negligence on the part of plaintiff in error, and that the motion made by him at the close of the evidence of defendant in error and again at the close of all the evidence, to exclude the evidence and direct a verdict, should have been given, and that it was error not to do so; second, that defendant in error's intestate assumed the risk of his employment; third, that the death of defendant in error's intestate was occasioned solely by his own negligence; fourth, that the court erred in giving the third and fourth instructions given on behalf of defendant in error.

The judgment will have to be reversed for the giving of the third and fourth instructions given on behalf of defendant in error.

The third instruction is as follows: "The court instructs the jury that the plaintiff's intestate was only required to exercise reasonable care and prudence in attempting to escape from defendant's bridge after the approach of the defendant's engine became known to him, and if you find from the evidence that he was

exercising reasonable care to escape from the bridge at the time of the injury then he was not guilty of contributory negligence, even though a better means of escape might have been chosen.''

The vice of this instruction consists in this, that the instruction practically assumes that defendant in error's intestate was not negligent in going upon the bridge, and limits the question of his negligence to his action in trying to escape the injury while on the bridge and after he had seen the train. It wholly leaves out of consideration the proposition as to whether or not he was negligent in going upon the bridge. The evidence offered on behalf of defendant in error clearly shows that before Lambert and defendant in error's intestate went upon the bridge they heard the train coming and that they discussed the question as to whether or not they would have time to cross the bridge. They came to the conclusion they would have the time and started across. We think it was a very vital question to be submitted to the jury as to whether or not defendant in error's intestate was guilty of contributory negligence when he went upon the bridge.

In *Krieger v. Aurora, E. & C. R. Co.*, 242 Ill. 544, the court at page 551 says: ''The averment was limited to the time when he was riding across the railroad, and there was practically no dispute that while he was so riding across the railroad he made every effort with his heavily loaded wagon to get off before the car reached him. The controversy was over the questions whether he could have seen or heard the car or the signals which were alleged to have been given before driving on the track and whether he was guilty of negligence in placing himself in the position of danger. An instruction must not limit the exercise of care and caution of the party injured to the time when he was in danger, regardless of his conduct in putting himself in that position.''

In *Chicago, M. & St. P. Ry. Co. v. Halsey*, 133 Ill.

248, the court, at page 254 says: "Nor should the inquiry in regard to contributory negligence by the deceased have been directed only to the evidence of what the deceased did at the time of receiving the injury. The claim of appellant is not that he then failed to do what a man of ordinary caution would have done to avoid injury, but that he failed to do what a man of ordinary caution, under like circumstances, would have done to avoid placing himself in a position from which he could not escape without being injured. One who, failing to observe due care, blindly walks into a danger that the observance of due care would have enabled him to avoid, is no less guilty of contributory negligence than he who, by the observance of due care could extricate himself from danger, fails to make any effort for his personal safety, and because thereof is injured." Citing, *Abend v. Terre Haute & I. R. Co.,* 111 Ill. 203. *North Chicago St. R. Co. v. Cossar,* 203 Ill. 608, quotes and approves *Chicago, M. & St. P. Ry. Co. v. Halsey, supra.*

Defendant in error contends that the expression "At the time of the injury" used in said instruction covers the whole time of the transaction, and cited authorities holding to that effect. However, in this case it cannot be said that "at the time of the injury" as used in the instruction can be held to include the action of defendant in error's intestate in going upon the bridge, because the instruction expressly limits the question of due care of defendant in error's intestate to what he did while on the bridge in attempting to escape after he had seen the train, so the cases cited are not applicable.

We therefore hold in view of the above authorities that the court erred in giving instruction No. 3. While contributory negligence in this case would not be a bar to a right of recovery, at the same time the amount of damages to be recovered is under the law to be abated in proportion to the amount the negligence of

the deceased contributed to the injury. It was therefore imperative that the jury be correctly instructed in reference thereto.

Instruction No. 4, given on behalf of defendant in error, is an instruction on the measure of damages. This instruction is faulty in that it fails to state that the amount of recovery should be limited to the present cash value of the future benefits, which the beneficiaries may be shown to have been deprived, by the death of the intestate, making proper allowances according to the circumstances for the earning power of the money.

In *Chesapeake & O. Ry. Co. v. Kelly*, 241 U. S. 485 [13 N. C. C. A. 673], the court in the body of the opinion says: "We are constrained to say that, in our opinion, the Court of Appeals erred in its conclusion upon this point. The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. * * * So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future. Ordinarily a person seeking to recover damages for the wrongful act of another must do that which a reasonable man would do under the circumstances to limit the amount of the damages. * * * But the question of the proper measure of damages is inseparably connected with the right of action, and in cases arising under the Federal Employers' Liability Act it must be settled according to general principles of law as administered in the federal courts."

Other errors were assigned on the record, but we do not deem it necessary to discuss the same.

For the reasons above set forth the judgment of the

trial court will be reversed and the cause will be remanded.

*Reversed and remanded.*