June W. Todd, Administrator of the Estate of Karen R. Todd, Deceased, Plaintiff-Appellee, v. Richard H. Borowski, et al., Defendants, Marvin R. Todd, Certain Defendant-Appellant.

Gen. No. 11,350.

Second District, Second Division.

April 18, 1960.

Robson, Masters, and Ryan, of Joliet (Frank H. Masters, Jr. and Don E. Ryan, of counsel) for appellant.

Gray, Thomas, Wallace, and O'Brien, of Joliet (Mel A. Gray, of counsel) for appellee.

JUSTICE CROW delivered the opinion of the court.

The plaintiff-appellee, June W. Todd, Administrator of the estate of Karen R. Todd, deceased, brought suit, charging in one Count that the defendant-appellant

Marvin R. Todd was guilty of wilful and wanton misconduct by reason of his acts as driver of an automobile in which the deceased, who was a daughter of the plaintiff, June W. Todd, and the defendant, Marvin R. Todd, was riding as a guest. Richard H. Borowski and his wife, Cecylia Borowski, were also defendants, under separate negligence counts, the Borowski car, owned by Richard H. Borowski and in which he was a passenger and driven by Cecylia Borowski, having collided with a car driven by the defendant Marvin R. Todd.

The Court directed a verdict in favor of the defendant Richard H. Borowski.

A special interrogatory, after due notice, was submitted by the defendant Marvin R. Todd and was given, without objection by the plaintiff. This special interrogatory was: "Was the defendant, Marvin R. Todd, operating his automobile in a wilful and wanton manner at and immediately prior to the collision in question?" The answer of the jury thereto was: "No."

The jury returned a general verdict against the defendants Marvin R. Todd and Cecylia Borowski in the sum of $25,000, and judgment was entered thereon, from which the defendant Todd appeals. The defendant Cecylia Borowski does not appeal. The Court allowed the plaintiff's motion to strike the special finding of fact, denied the defendant-appellant's motion for judgment in accordance with the special finding, and denied all post trial motions of all the parties.

The defendant-appellant contends that: the Court should have entered judgment for this defendant in accordance with the special finding of fact of the jury; the plaintiff's objections to the special interrogatory are not timely; the verdict is excessive and not in accord with the law and the evidence, and erroneous instructions on damages led to an excessive verdict and was prejudicial error.

370

The plaintiff-appellee contends that: the defendant-appellant Todd was guilty of wilful and wanton conduct; the special finding of fact on the special interrogatory was not fully irreconcilable with the general verdict against the defendant-appellant; the special finding of fact was against the manifest weight of the evidence; the judgment should be affirmed because it did not result from passion, prejudice or sympathy, and the amount of the verdict is peculiarly within the province of the jury.

A review of the evidence discloses that the defendant-appellant Marvin R. Todd, his wife, June W. Todd, the plaintiff-appellee administrator, a daughter, Karen R. Todd, age 9½ years, the deceased, and a son, Perry, age 6 years, were on June 28, 1957, proceeding from Rockford, Illinois, where they had visited relatives, to Exeter, New Hampshire, their home. Marvin Todd was driving a 1951 two-door Chevrolet easterly on a crushed stone surfaced highway, the Plainfield-Lockport Road in Will County, Illinois. They reached the intersection of that highway and U. S. 66 about 10:00 o'clock a. m. They had started from Rockford about 7:30 a. m. Todd's headlights were on, but he was not familiar with the location. Visibility was not normal because of the weather. U. S. 66 extends north and south at that point of intersection and is composed of two concrete traffic lanes each 24′ wide for traffic in either direction, separated by an intermediate parkway 30′–33′ in width. The terrain is level, with no obstructions to the view north or south. Todd brought his car to a full stop at a stop sign located 10 to 15 feet west of the most westerly or southbound lanes of U. S. 66. Two or three southbound cars passed while his car was standing there. He looked north and south and, seeing nothing, started across the westerly or southbound lanes of U. S. 66 at a speed of 10 m.p.h. He could see a mile to the south. After crossing the

371

southbound lanes of traffic and part of the intermediate parkway he reached the yield right-of-way sign placed about 10 feet west of the northbound traffic lanes. At that time Todd again looked to the south and observed a northbound automobile which he estimated to be one-fourth ($\frac{1}{4}$) to one-half ($\frac{1}{2}$) mile away. He said it was raining heavily. He was not able to estimate the speed of that vehicle, nor state in which of the two northbound lanes it was traveling. Todd did not look to the south again between the time he passed the yield right-of-way sign and the collision. He continued across at 10 m.p.h. and was approximately two-thirds ($\frac{2}{3}$) of the way across the northbound traffic lanes when his car and the northbound car, being operated by defendant Cecylia Borowski, collided. Following the impact the Todd car was turned around and facing almost west, still in the northbound lanes and in the north half of the intersection. The Borowski car, a 1955 Pontiac, ended up in a northeasterly direction, some 250 to 300 feet away, in a corn field.

Cecylia Borowski and her husband had left St. Joseph, Mo., about 2:00 a. m. that morning. She had been driving since 7:00 a. m. It had been raining through the morning. At the time of the accident it was raining, but she said not particularly heavily. Her car was in the right hand or most easterly lane, going north, about 60 m.p.h. About two hundred (200) feet south of the intersection she first saw the Todd car, which was then stopped at the stop sign west of Highway 66. She said it started to move into the intersection, proceeding very slowly. As she reached a point one or two car lengths from the intersection she realized there was danger of a collision, took her foot from the gas pedal, and turned her car to the right. Mrs. Borowski testified the Todd car appeared to increase its speed some as it entered the northbound traffic lanes. Mr. Borow-

372

ski said the Todd car's speed was 20 m.p.h. Mrs. Borowski did not apply her brakes at any time before the impact.

There is some conflict in the testimony as to the point of first contact between the respective cars. Todd said his car was struck on the right side, just back of the front wheel. The witness Oltman, a State Police Officer at the scene afterwards, testified that the right front of the Todd car was damaged, that the motor was thrown out of the car, and that it was not repairable. Mrs. Borowski said her car was struck at the left front door and fender. Before the impact Karen, the decedent, was lying down in the front seat, and the boy Perry was in the rear seat with Mrs. Todd. After the impact the decedent was found 150 feet or so into a field in the direction of the Borowski car. The decedent had just completed the third grade, and her grades were good or excellent. She was a strong, robust child, of sunny disposition.

A part of the testimony of Marvin R. Todd, as abstracted, is as follows: "I glanced to the South at that time before I passed that yield sign and before I continued to cross the southbound lanes. I saw this car coming down the road that I estimated was ¼ to ½ mile away. . . . I do not recall whether I slackened the speed of my vehicle at any time from the point where I crossed the southbound lanes of 66 until I entered the northbound lanes of 66. I do know I was reasonably certain it was clear."

Mrs. Todd, the plaintiff-administrator, wife of the defendant Todd, testified that she was a passenger in the car, she did not recall what occurred immediately before the collision because she had dozed off, and the first knowledge she had of the accident was when the cars hit. On cross-examination she said, as abstracted: "He (Mr. Todd) observed the traffic

signs and signals between Rockford and this accident. He did not drive his car at an excessive rate of speed prior to the accident, but I would say in a careful and prudent manner."

The injury to guest statute, Sec. 42–1 of the then Motor Vehicle Law, Ch. 95½ Ill. Rev. Stats., 1955, par. 58a, provided, so far as material, that:

"No person riding in a motor vehicle as a guest, without payment for such ride, nor his personal representative in the event of the death of such guest, shall have a cause of action for damages against the driver or operator of such motor vehicle or its owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought. . . ."

And Section 65 of the Civil Practice Act, as to verdicts and special interrogatories, Ch. 110 Ill. Rev. Stats., 1957, par. 65, provided that:

"Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly."

██ It is difficult, if not impossible, to lay down a rule of general application by which it may be deter-

374

mined what degree of negligence, if any, the law considers equivalent to a wilful or wanton act; whether an act is wilful or wanton is greatly dependent upon the particular circumstances of each case; normally it is the peculiar province of the jury to weigh and consider; the injury to guest statute would have no purpose if a momentary lapse of attention, or inadvertence in the use of faculties, such as may constitute negligence, could properly be called wilful and wanton misconduct; the latter requires a conscious indifference to danger, and has been repeatedly referred to as an intentional disregard of a known duty necessary to the safety of others: Paul v. Garman, et al. (1941) 310 Ill. App. 447; Wise v. Wise, et al. (1959) 22 Ill.App.2d 54.

 Special interrogatories are used for the purpose of testing the general verdict against the jury's conclusions as to the ultimate controlling facts—the statute expressly provides that the answer to the special interrogatory controls the general verdict when inconsistent, and it may not be nullified by disregarding its mandate: Wise v. Wise, et al., supra. The affirmative or negative answer of the jury to a proper special interrogatory of either party as to a material question of ultimate fact, such as the alleged wilful and wanton acts of either party, is binding on the trial court (upon the other party's motion to set it aside) unless such is not supported by any competent evidence, or unless it is against the manifest weight of the evidence: Paul v. Garman, et al., supra.

The plaintiff, however, first calls particular attention to the language "operating his automobile" and "at and immediately prior to the collision" in the special interrogatory and urges that the jury's negative special finding thereon as to the defendant Todd's alleged wilful and wanton acts is not irreconcilable with the jury's general verdict against that defend-

ant, because the special interrogatory and finding deal only with that defendant's "operating his automobile" whereas the complaint charges that defendant with wilful and wanton misconduct as to other matters, referring particularly to subparagraphs (b) and (c) of paragraph 6 of Count III, and because the interrogatory limited the jury's consideration to a period "at and immediately prior to the collision" whereas the jury may have properly considered the defendant's conduct during a period of longer duration and prior thereto. The plaintiff, secondly, urges that the jury's special finding on the special interrogatory is against the manifest weight of the evidence.

Under the wilful and wanton Count, Count III, against the defendant-appellant, in paragraph 5, the plaintiff alleges—"Under the facts and circumstances then existing there was imposed upon the defendant, Marvin R. Todd, a duty to exercise due care and caution in the operation of said motor vehicle so as not to injure the said plaintiff's intestate or other parties lawfully upon said highway," and it is then alleged in paragraph 6 that notwithstanding that duty the defendant Marvin R. Todd "in driving said automobile was guilty of one or more of the following wilful and wanton acts or omissions committed or omitted with conscious indifference to existing circumstances and conditions and to the dangers there involved to the plaintiff's intestate as follows:

(a) Drove said automobile with a wilful and wanton disregard for the safety of Plaintiff's intestate in violation of Section 146 of Chap. 95½ Illinois Revised Statutes.

(b) Failed to keep proper lookout for traffic approaching from the right when he knew or should have known that such failing would probably cause injury to others.

376

(c) Failed to remain stopped at said intersection until entrance therein could be made with reasonable safety in violation of Section 161 of Chap. 95½, Ill. Rev. Stats.

(d) Failed to stop before driving upon and across the two (2) North bound lanes of said U. S. Route 66.

(e) Failed to yield the right-of-way to automobiles on a through highway in violation of Section 167 of Chap. 95½, Ill. Rev. Stats.

(f) Failed to keep said automobile under proper control.

(g) Otherwise so wilfully and wantonly drove said automobile as to cause it to collide with another automobile with great force and violence."

In view of the language of the complaint we are of the opinion that "operating his automobile"—the operation of his motor vehicle by the defendant Todd—is all that can reasonably be said or inferred to be involved in the case—it is only his alleged wilful and wanton misconduct in connection with the operation of his motor vehicle with which he is charged in the complaint. The only alleged duty on the defendant Todd is a duty *"in the operation of said motor vehicle."* And the only alleged violation of that duty is that *"in driving said automobile"* he was guilty of one or more "wilful and wanton acts or omissions" as stated. The allegations in subparagraph (b) of paragraph 6 that he "failed to keep proper lookout for traffic approaching from the right," etc., and in subparagraph (c) that he "failed to remain stopped at said intersection until entrance therein could be made with reasonable safety," etc., are merely two particular alleged wilful and wanton acts or omissions *"in driving said automobile"* of which it is alleged he was guilty. Failing (or not) to keep proper lookout for

traffic approaching from the right, and failing (or not) to remain stopped at said intersection until entrance therein could be made with reasonable safety were simply some of the component parts or phases or features of *"operating his automobile."* They were not other, distinct matters disassociated from and unrelated to "operating his automobile." The plaintiff's own language in her complaint and the format thereof make that reasonably clear and practically preclude the plaintiff from now urging that those matters in subparagrpahs (b) and (c) are not parts of "operating his automobile." The phraseology "operating his automobile" is not necessarily limited only to a state of physical motion produced by the mechanism of the car, but it includes at least ordinary stops in, on, and about the highway, and those are to be regarded as fairly incidental to the operating thereof: Commonwealth v. Henry (1917) 229 Mass. 19; Hand v. Frazer (1931) 248 N. Y. S. 557. The plaintiff refers us to no cases on this.

As to the language "at and immediately prior to the collision," used in the special interrogatory, the same language used in an instruction has been held to include, of necessity, the conduct of a party in placing himself in a position of possible danger out of which a collision might have arisen, and not to ignore the question of whether the party has been guilty of misconduct in placing himself in that situation, and has been approved: Star Service & Petroleum Co. v. Short (1951) 344 Ill. App. 280. Similar language—"before and at the time of the injury," or "before and at the time of the accident"—in instructions has been approved: Chicago City Ry. Co. v. O'Donnell (1904) 208 Ill. 267; South Chicago City Ry. Co. v. Kinnare (1905) 216 Ill. 451. All that occurred of significance in the case at bar from the time the defendant Todd reached

378

the intersection to the time of the accident could not have exceeded a few seconds and covered a movement by his car of less than 100 feet, and, under the circumstances, the language in the interrogatory "at and immediately prior to the collision" was broad enough: Cf. Chicago City Ry. Co. v. O'Donnell, supra. The plaintiff's own given instruction No. 6—the only specific instruction she offered on this matter—used the following language, in part: ". . . if you find from the greater weight of the evidence that the defendant, Marvin Todd, with knowledge that the Borowski car was approaching from the south, *drove the vehicle in which the deceased Karen R. Todd was riding onto the northbound lane of state highway 66 . . .*"; and the plaintiff's complaint, paragraph 9, alleged "that *at said time and place and immediately prior to the collision above referred to,* said decedent's mother, June W. Todd, and decedent's minor brother, Perry Todd, were each free from any negligence contributing to the injuries or death of plaintiff's intestate";— which indicate that the plaintiff herself apparently considered the only really significant, crucial period of time to be at and immediately prior to the collision when the defendant Todd drove onto the northbound lanes.

The cases the plaintiff cites on this particular question—Kennedy v. Ross (1919) 213 Ill. App. 446, Bale v. Chicago Junction Ry. Co. (1913) 259 Ill. 476, Edwards v. Hill-Thomas Lime & Cement Co. (1941) 378 Ill. 180, and Village of Lockport v. Licht (1906) 221 Ill. 35—all involved instructions on contributory negligence; none involved facts the same as or similar to those in the present case; none concerned the language "at and immediately prior to the collision" used in the present special interrogatory; the particularly pertinent language, to put it briefly, in the Kennedy case instruction

was ". . . in attempting to escape from defendant's bridge after the approach of the defendant's engine became known to him, . . . to escape from the bridge at the time of the injury . . ."; in the Bale case the Court said the instruction did not cover the care of the deceased in going into the dangerous place but only his care after he had gone there; in the Edwards case the language was "in the situation in which plaintiff was placed"; and in the Village case the language was "at the time of the injury." We do not believe any of those are decisive or persuasive as to the case at bar. The Edwards case has been distinguished in Star Service & Petroleum Co. v. Short (1951) 344 Ill. App. 280.

The remaining cases suggested by the plaintiff— Devine v. Federal Life Ins. Co. (1911) 250 Ill. 203, Wicks v. Cuneo-Henneberry Co. (1925) 319 Ill. 344, Packard v. Kennedy, et al. (1955) 4 Ill.App.2d 177, and Thomas v. C. T. A., et al. (1958) 16 Ill.App. 2d 470 —all were concerned, in part, with the relationship between special interrogatories and the answer thereto and general verdicts, but none involved facts the same as or similar to those of the present case, or special interrogatories similar to that here presented. In the Devine and Wicks cases the special finding was held not to be the determination of any ultimate fact or of a fact which had a controlling effect upon any ultimate fact and was hence not determinative. And in the Packard and Thomas cases there were clearly other determinative issues not answered or foreclosed by the findings on the special interrogatories. The cases are helpful on the general principles involved, but they are not decisive here, and our views here are in accord with the general principles there referred to.

■ ■ By analogy to the purpose of an instruction, a special interrogatory is for the jury to find specially upon a material ultimate question of fact by immediate

380

application thereof to the subject matter before them, and the test as to the clarity and meaning of its language and phraseology is how and in what sense, under the evidence before them and the circumstances of the trial, ordinary laymen acting as jurors will understand the interrogatory: Cf. Reivitz v. Chicago Rapid Transit Co. (1927) 327 Ill. 207. We believe the language of the interrogatory is reasonably clear, is sufficiently broad as to the acts and time covered as to include the matters to which the plaintiff refers, that the language would be reasonably understood by the jury as we have indicated, and that it fairly presented one of the material, ultimate questions of fact, for the jury to find specially upon.

■ The special finding of the jury on this special interrogatory was in the negative—that the defendant Todd was not operating his automobile in a wilful and wanton manner at and immediately prior to the collision. An opposite conclusion is not clearly apparent, and the finding is not clearly or palpably against the manifest weight of the evidence: Tabor v. Tazewell Service Co. et al. (1958) 18 Ill.App.2d 593; Robinson v. Workman (1957) 15 Ill.App.2d 25. Hence the special finding cannot be said to be against the manifest weight of the evidence: Paul v. Garman, et al., supra. The cases referred to by the plaintiff on this phase of the matter—Biggerstaff v. Estate of John B. Nevin (1954) 2 Ill.App.2d 462, Tennes, et al. v. Tennes (1943) 320 Ill. App. 19, and Thompson v. Fidelity & Casualty Co., etc. (1958) 16 Ill.App.2d 159 are not helpful.

■ Under the circumstances the special finding of fact is irreconcilable with and inconsistent with the general verdict against the defendant Todd and the former controls the latter: Ch. 110 Ill. Rev. Stats., 1957, par. 65.

We believe, under the facts in evidence and the pleadings, this special interrogatory having been submitted and given without objection on the part of the plaintiff, that the jury's finding thereon should not have been stricken, the defendant Todd's motion for judgment in accordance therewith should not have been denied, and the Court should have entered judgment for the defendant Todd in accordance with that special finding of fact: Wise v. Wise, et al., supra: Cf. Paul v. Garman, et al., supra. It is not necessary, under the circumstances, to consider the other contentions.

The judgment against the defendant Marvin R. Todd is, accordingly, reversed and the cause remanded, with directions to enter a judgment on the special interrogatory and the answer thereto for the defendant Marvin R. Todd.

Reversed and remanded with directions.

SOLFISBURG, P. J. and WRIGHT, J., concur.