ROBERT VERDONCK, Plaintiff-Appellant, *v.* A. W. FREEDING, d/b/a Freeding Disposal and Freeding Disposal, Inc., Defendant-Appellee.·

First District (4th Division)   No. 63225

Opinion filed December 29, 1977.—Rehearing denied January 26, 1978.

John C. Mullen, Ltd., of Chicago (Harold A. Katz, Jerome Schur, and Thomas A. Clancy, of counsel), for appellant.

Richard L. Berdelle, of Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Robert Verdonck, a janitor, brought this action against defendant, A. W. Freeding, d/b/a Freeding Disposal and Freeding Disposal, Inc., to recover damages for injuries he received on October 8, 1969, when his left hand became caught by the hopper of a garbage compacting mechanism located at the back of defendant's garbage truck. The injury required surgical removal of all of plaintiff's fingers and a substantial portion of his hand. The jury returned a general verdict in favor of defendant and a special interrogatory finding plaintiff was contributorily negligent. Plaintiff has appealed and presents the following contentions for review: (1) the trial court committed prejudicial error in

excluding the testimony of Bruce Moore, a truck salesman, that defendant could have purchased a safety device for the vehicle that would have prevented this accident; (2) the conduct of defense counsel in consistently presenting irrelevant evidence and evidence excluded by the motion *in limine* deprived plaintiff of a fair trial; (3) the trial court erred in not allowing plaintiff's counsel to cross-examine defendant's employee under section 60 of the Civil Practice Act; and (4) defense counsel improperly conducted cross-examination of Naomi Drew, defendant's truck driver, before and after cautions from the trial judge.

Naomi Drew testified for plaintiff that he was employed by defendant as a garbage truck driver. He explained that ashes were dumped into a metal hopper running the entire width of the rear of the garbage truck. By pressing a button on the right rear of the truck, he activated the garbage compactor mechanism into a cycle in which the hopper ascended and remained up while a blade, which was not visible from the outside, scooped out the interior of the hopper. When the cycle was completed, the hopper was empty and descended to its original position. By stipulation, a video tape depicting the complete cycle of the garbage compactor was exhibited to the jury later in the trial. It was also stipulated that the total cycle took 14 seconds to complete, and that the hopper remained in an up position for 5½ seconds.

About 8:30 a.m. on October 8, 1969, Drew was driving a garbage truck in an alley south of Carmen Avenue in Chicago. At the first stop in this alley, he and his helper, Louis Lucas, placed cinders in the metal hopper in the rear of the garbage truck. The hopper was then in its customary down position. He drove and Lucas proceeded on foot east in the alley to the next stop which was behind the building at 1319 Carmen. He parked so the rear of his truck was adjacent to the basement door leading to the boiler room in the basement of this building. The left side of the truck was about 3 feet from the building. As he alighted from the truck, he saw plaintiff in a north-south gangway which opened into the alley just in front of the truck. Plaintiff was carrying a cardboard garbage can on his back and was headed toward the alley. Drew walked around to the right rear of the truck where the control panel for the metal hopper was located. Drew pushed the "start" button to raise the metal hopper and thus deposit the cinders picked up at the previous stop inside the truck. At this time he saw plaintiff walking fast and coming around the front of the truck, carrying a cardboard garbage can on his back. Without speaking to plaintiff, Drew then entered the basement door adjacent to the rear of the truck. Just inside the basement door, Drew passed Lucas, who had preceded him on foot and who was carrying a can of cinders. He then heard a scream, looked out the door and saw that the hopper had come down on plaintiff's arm which was caught between the bottom of the hopper, which was in the lowered position, and the truck frame. Drew

ran outside and pushed the control buttons to free plaintiff's hand. The barrel plaintiff had been carrying was on the "dust trap," a metal plate at the bottom of the truck situated underneath the hopper, which prevents the ashes from falling into the street.

Plaintiff, Robert Verdonck, testified that as he entered the alley from the gangway he saw the garbage truck facing east. He walked between the building and the truck, intending to go into the boiler room to bring the can of garbage he had just collected into the boiler to burn. This was his usual practice. The engine of the truck was running and was noisy. However, he had no difficulty hearing the driver, who spoke to him as he entered the basement and told him to dump the garbage can into the truck. Plaintiff set the can down, then picked it up to dump the garbage into the truck. He did not pay attention but "just dumped" the contents of the can into what he described as "Just a big hole, a big empty hole." Suddenly, plaintiff claimed he could not move the can and looked up and saw something on top had caught the barrel. He pulled away but it was too late.

During the 6 years he was a janitor at 1319 Carmen, he never had occasion to be at the back end of the truck watching the hopper mechanism in full cycle. However, he had seen the scavenger service employees dumping cinders into a shiny hopper-like device at the back end of the truck. Plaintiff explained that no written rule of the union required him to dump garbage and he never dumped garbage before this. Plaintiff asserted that, except for the fact that the driver, Drew, told him to dump the garbage in the back of the truck, he would not have done so on this occasion.

During cross-examination, he conceded that, if he dumped the garbage into the truck all the time, it would have lessened his work because he would not have had to burn the garbge. He also admitted that he had observed the bottom part of the mechanism at the rear of the garbage truck rise to the top end of the truck and that after a while it came down so that ashes or other materials in the back end of the truck somehow were lifted and the hopper came back down empty. He further conceded that the sound when the truck was running and the sound when the mechanism was in operation were distinctively different and the latter sound was very loud. In recalling the events that occurred on the day of the injury, plaintiff further testified on cross-examination that, when he got to the back end of the truck, the sound was "very, very noisy" that day, but he did not look into the truck to see if there was any mechanical motion at the back end of the truck and did not hesitate in trying to dump the contents of the can he was carrying. He also admitted that he did not look to see where the packer blade was that morning, although he heard the distinctive sound that comes from the truck when it is in a portion or all of its cycle. And he did not remember testifying at his deposition that

on rare occasions he had seen the men activate the mechanism that would make the packer sweep the garbage out of the receptacle into the upper portion of the truck. Plaintiff reiterated that the driver said, "Go dump the garage," and it did not occur to him that the truck might be in a compacting cycle. He estimated it was approximately 7 seconds from the time the driver asked him or told him to dump the garbage until the time he actually started to dump it into the back end of the truck, but at his deposition he estimated that it was 20 seconds.

Plaintiff first contends he was prejudiced because the trial court excluded evidence concerning the availability of a safety door that defendant could have purchased at a price of $300 which would have prevented this accident from happening. Plaintiff's counsel had subpoenaed Bruce D. Moore, a salesman familiar with the garbage compactor involved. Plaintiff made an offer of proof in which Moore described in detail how the safety door operated: When the cycle started and the hopper ascended, the safety door would automatically lower and come into a lowered position closing the 80-inch wide rear opening at the loading point and would stay down until the hopper came back into the lowered position.

■■ On appeal, defendant contends this evidence was not admissible and it argues that proof of the availability of an optional safety door did not tend to prove the allegations of the complaint. The failure to take proper safety precautions may be evidence of negligence. (*Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 247-48, 302 N.E.2d 257; *cf. Rivera v. Rockford Machine & Tool Co.* (1971), 1 Ill. App. 3d 641, 646, 274 N.E.2d 828; *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 85-86, 319 N.E.2d 232.) However, if this evidence was admissible to prove defendant's negligence and should have been admitted, plaintiff was nonetheless not entitled to a new trial if the jury properly found plaintiff was contributorily negligent since plaintiff's contributory negligence is a complete bar to recovery. (*Maki v. Frelk* (1968), 40 Ill. 2d 193, 195, 239 N.E.2d 445; *Hermann v. City of Chicago* (1973), 16 Ill. App. 3d 696, 701, 306 N.E.2d 516.) Therefore, we must first consider the question of plaintiff's contributory negligence.

In this case, plaintiff claimed he threw the garbage can into the truck at the specific request or suggestion of defendant's truck driver. However, the truck driver denied this. Plaintiff admitted that, as he approached the garbage truck, he heard the distinctive and noisy sound made by the garbage compactor as it went through its cycle; and the jury could have reasonably believed that plaintiff was familiar with the operation of the garbage truck. By his own admission, plaintiff did not look into the rear of the vehicle to see if the compactor mechanism was being activated before he began to empty the garbage can into the rear of the truck.

A special verdict prevails over a general finding and will be sustained unless it is against the manifest weight of the evidence. (*Todd v. Borowski* (1960), 25 Ill. App. 2d 367, 381, 166 N.E.2d 296; *Saldana v. Wirtz Cartage Co.* (1977), 55 Ill. App. 3d 440, 370 N.E.2d 1131; *Beverly Bank v. Penn Central Co.* (1974), 21 Ill. App. 3d 77, 82, 315 N.E.2d 110.) Under the circumstances, we find that the jury's conclusion that plaintiff was contributorily negligent is not against the manifest weight of the evidence. The excluded evidence of defendant's failure to install a safety door concerned only the issue of defendant's negligence. Even if defendant was negligent as a matter of law, a new trial would not be warranted because plaintiff's contributory negligence completely bars his recovery. Therefore, we conclude the evidence amply supported the jury's finding of contributory negligence. However, we deem it appropriate to consider if certain matters which occurred during the course of trial prejudiced the jury against defendant.

Plaintiff's second and fourth contentions are interrelated and pertain to the conduct of defense counsel which plaintiff claims denied him a fair trial. Plaintiff complains that defense counsel, in apparent disregard of a court directive, referred to certain rules of plaintiff's union and elicited information concerning plaintiff's family status; referred to defendant's procedure in emptying trucks, a matter upon which the court had reserved ruling; stated before the jury that photographs were never furnished to defendant; argued with the court concerning the admission of testimony despite the court's previous rulings outside the presence of the jury; repeatedly inquired beyond the scope of direct examination of plaintiff concerning future earnings in derogation of prior rulings by the court; stated in the jury's presence, "I haven't had five minutes of uninterrupted questions" when plaintiff's counsel asked for a hearing outside the presence of the jury thereby suggesting plaintiff was obstructing the trial; characterized defendant's truck driver as the client of plaintiff's attorney; inquired of that truck driver beyond the scope of the direct examination; and acted improperly in final argument. Plaintiff concludes such conduct constituted reversible error.

■■ We note, however, that on several occasions the trial court indicated that it might act favorably should plaintiff request a mistrial. Plaintiff's counsel declined, which suggests strongly that he did not think plaintiff was severely prejudiced by the conduct of defense counsel. After reviewing the entire record, we are persuaded that plaintiff did receive a fair trial. Essentially, the issue was one of credibility. Initially, the jury had to choose whether to believe that defendant's truck driver told plaintiff to dump the garbage in the truck, thereby indicating to plaintiff that it was safe to do so, even though the driver knew that the compactor was in cycle, or whether plaintiff merely took it upon himself to dump the

garbage to save himself a few steps, and he acted in a manner which was careless enough to amount to contributory negligence. Even if the jury concluded that plaintiff was told to dump the garbage, it might have reasonably found plaintiff should have known it was unsafe to do so. As heretofore noted, the jury's determination in regard to plaintiff's contributory negligence was supported by the evidence. When viewed in context, the conduct of which plaintiff complains did not materially affect that determination. In conclusion, while we do not condone counsel's conduct in violation of the trial court's orders, we do not consider that the claimed trial errors unduly affected the result, and we conclude that plaintiff was not prejudiced. *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 139, 254 N.E.2d 453.

■■ Finally, plaintiff contends the trial court refused to allow plaintiff to call Drew under section 60 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60), which provides that at trial "the officers, directors, managing agents or foreman of any party to the action" may be called and examined as if under cross-examination. Plaintiff contends Drew was a foreman, not merely a truck driver, since he supervised the helper, and plaintiff directs our attention to *Frunk v. City of Calumet City* (1958), 17 Ill. App. 2d 285, 149 N.E.2d 776 (abstract), in which the driver of a fire truck was allowed to be called under section 60, because he was a fire captain and boss of the crew. Defendant cites *Lamberes v. Northern Cartage Co.* (1967), 86 Ill. App. 2d 311, 314-15, 229 N.E.2d 901, where the court held that a truck driver was not an officer, director, managing agent, or foreman of the defendant.

Even if plaintiff should have been allowed to call the driver under section 60, there was no reversible error because the truck driver was called by the defendant and his testimony was fully developed by both parties. In *Gillespie v. Norfolk & Western Ry. Co.* (1972), 3 Ill. App. 3d 779, 783, 278 N.E.2d 420, cited by defendant, it was held proper for the trial court to refuse to permit plaintiff to call defendant's railroad engineer under section 60 because he was not a "managing agent" or "foreman" of defendant. The court also said:

> "Moreover, plaintiff called the engineer on direct examination and elicited the same testimony which he would if cross examining him. Hence, there could be no reversible error even had he qualified as a witness properly able to be called under Section 60." 3 Ill. App. 3d 779, 783-84.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and LINN, JJ., concur.