BARBARA GILLESPIE, Admrx. of the Estate of Mose Childers, deceased, Plaintiff-Appellant, *v.* NORFOLK AND WESTERN RAILWAY Co., Defendant-Appellee.

(No. 11383;

Fourth District—February 7, 1972.

780

Paul M. King, of Chicago, for appellant.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, (Carl R. Miller, Nicholas J. Neiers, Dorothy K. Hahn, of counsel,) for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This appeal arises from a judgment for defendant railroad entered on jury verdict against plaintiff and in favor of defendant in a cause brought by plaintiff administratrix for the death of the driver of an automobile in an auto-train collision on November 14, 1965, between the automobile of Mose Childers and a passenger train of defendant, Wabash Railroad, now Norfolk and Western Railway Company.

Plaintiff assigns as error (1) the trial court's refusal to permit plaintiff to introduce into evidence certain sworn answers to interrogatories admitting the existence and destruction by defendant of a speed recorder tape relating to the question of the speed of defendant's train; (2) refusal to permit plaintiff to call and produce direct testimony of defendant's chief claim agent as to the existence and destruction of such speed recorder tape; (3) refusal to give plaintiff's tendered instruction concerning alleged negligence of defendant in failing to provide flasher lights, warning bells, or crossing gates at the crossing in question; and (4) refusal to permit plaintiff to call and examine defendant railroad's engineer under Section 60 of the Illinois Civil Practice Act as a "managing agent" or "foreman" of defendant.

The accident site was a short distance from the corporate limits of Oakley, Illinois, where north-south County Highway 25 intersected the east-west main line tracks of the railroad. The crossing was essentially at right angle to the highway. Decedent was driving his automobile in a generally southerly direction, and the train was traveling generally west.

The evidence deposition of two disinterested eyewitnesses, Sherman Hoots and Ralph Griffith, taken by defendant, were introduced into evidence by plaintiff Mr. Hoots, who lived in a trailer near the railroad crossing, testified that just before the collision, when he was still in his trailer, he heard the horn or whistle of the train, and that as he walked out of his trailer, the train was still quite a way up the track. He observed the car approaching the intersection from the north at a speed of between 30 and 40 miles per hour. The car did not change its speed at any time before the collision. He said the train still had "his blast open" continuously until impact. He did not know the speed of the train as he was concerned with the approaching car.

Ralph Griffith, in his evidence deposition, testified that at the time of the accident he was standing in his yard about 900 feet northwest of the crossing; that when he observed the south-bound car, it was halfway between the crossing and a crossroad located a little more than a quarter mile to the north of the crossing; that the car was traveling between 50 and 60 miles per hour, and continued at this speed up until the time of the collision. He stated that the car did not slow down nor turn in any direction prior to the collision. He estimated the speed of the approaching train to be about 70 miles per hour. He did not know whether the train blew its whistle or horn before the accident, but assumed that it did.

The engineer of the train, called by plaintiff, testified that he was familiar with the crossing; that he was seated in the cab on the right side of the engine, with view to the north; that there were some dead weeds which were not tall and a tank in the northeast quadrant, but he could see the car continuously from the time he first observed it up until the time of impact. He testified that the maximum speed the train could travel as established by the railroad company was 78 miles per hour and as established by the Interstate Commerce Commission was 79 miles per hour. He further testified that about two miles east of Oakley and between that point and the crossing, he looked at the speedometer and kept his eye on it most of the time and observed that he was traveling about 75 miles per hour, except that the speed may have dropped down some after he applied the brakes on the emergency before the accident. He stated that he started blowing his whistle at the whistling post about a quarter of a mile east of the crossing, at which time he first saw the automobile. When he realized that the car was not slowing up, he applied his emergency brakes and started to blow the alarm whistle. The brakes and alarm whistle were both on continuously from that time until the train came to a stop. The train was equipped with two headlights, both of which were lighted at all times.

Both plaintiff and defendant introduced evidence of experts who made studies of the crossing and surrounding area at dates later than the date of accident. The testimony of these witnesses to a great extent are contradictory, but at best show that the train could have been observed by the driver of the car at a substantial distance from the crossing. While there was some testimony concerning tanks in the area, both the testimony and the photographs in evidence showed that these constituted no obstruction of vision the greater part of the distance.

■■ While the trial court's refusal to permit the sworn answers of defendant to interrogatories may have constituted error, such refusal did not constitute reversible error under the facts of this case. Further,

we note that the answers would not have been relevant except as to the speed of the train prior to the accident and they contained neither interrogatories nor answers as to actual speed. Plaintiff's own witnesses, Hoots, Griffith and Goodwin, testified to the train's speed. Their direct evidence was superior to any admission which the answers to the interrogatories would have produced.

■■ The court's refusal to permit plaintiff to call defendant's agent, Jamison, as to the existence and destruction of the speed tape recorder, likewise, constituted no reversible error since the offer of proof of such proposed testimony showed that it related only to the answers to interrogatories and was not relevant and would not have produced any positive evidence on defendant's alleged negligence or decedent's alleged due care.

■■ The court correctly refused to give plaintiff's instruction Number 19 which would have permitted the jury to determine whether defendant was negligent in failing to provide flasher lights, warning bells or crossing gates at the crossing. Under the evidence before the court, the court correctly concluded that there was no evidence from which the jury could have determined whether defendant had such a duty and whether the failure to comply therewith was negligence.

■■ More directly decisive of this last matter, however, is the fact that plaintiff is not entitled to have this court review such instruction as plaintiff failed to properly abstract all instructions and all of the conference on instructions. None of the instructions and no part of the instruction conference are set out in the abstract. Only a small part of plaintiff's instruction Number 19 is set out in plaintiff's brief. The Report of Proceedings contains only that part of the instruction conference concerning plaintiff's Instruction 19. Error cannot be predicated upon giving, refusal or modification of instructions unless all of the instructions are set out in the abstract. (*Pantlen v. Gottschalk* (3rd Dist. 1959), 21 Ill.App.2d 163, 177, 157 N.E.2d 548; *Goodman v. Motor Products Corp.* (2nd Dist. 1959), 22 Ill.App.2d 378, 161 N.E.2d 31.) Likewise, all of the conference on instructions must be properly abstracted as comment on one instruction may have an important bearing on another instruction. Hence, this contended error is not before us for review.

■■■ Plaintiff's last contention of error was the refusal of the trial court to permit plaintiff to call and examine defendant's engineer under Section 60 of the Illinois Civil Practice Act. We are of the opinion that the engineer was not a "managing agent" or "foreman" of defendant within the meaning of Section 60. (*Olsen v. Evanston Bus Co.* (1st Dist. 1940), 307 Ill.App. 669, 30 N.E.2d 947; *Lamberes v. Northern Cartage Co.* (1st Dist. 1967), 86 Ill.App.2d 311, 229 N.E.2d 901.) Moreover,

plaintiff called the engineer on direct examination and elicited the same testimony which he would if cross examining him. Hence, there could be no reversible error even had he qualified as a witness properly able to be called under Section 60. (See 35 ALR.2d 759 in discussing Federal Rule 43(b) after which Section 60 was modeled.)

■■■ The evidence in this case amply supported a verdict for the defendant on the ground of contributory negligence of the plaintiff's decedent. Even the testimony of the witnesses of the plaintiff supports such a conclusion. When it is a question of fact as to the negligence of the defendant or the contributory negligence of the plaintiff, the verdict will only be overruled by the reviewing court where it was clearly and palpably erroneous. (*Turner v. Seyfert* (3rd Dist. 1963), 44 Ill.App.2d 281, 194 N.E.2d 529.) Not every erroneous ruling on evidence or on instructions is ground for reversal. Such rulings are harmless where the result reached was not affected thereby and was the only one warranted by the other evidence in the case. (*De Graff v. Manz* (1911), 251 Ill. 531, 96 N.E. 516.) We perceive that no different result would be obtained on retrial as plaintiff's contributory evidence was a bar to recovery.

Judgment affirmed.

TRAPP, P. J., and SMITH, J., concur.