DANNY W. ZOOK, Plaintiff-Appellee, v. NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

Fourth District   No. 4—94—0129

Argued October 12, 1994.—Opinion filed November 15, 1994.—Rehearing denied December 23, 1994.

John E. Fick (argued) and Rhonda L. Richards, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellant.

Harlan Heller (argued), H. Kent Heller, and William R. Tapella, all of Heller, Holmes & Associates, P.C., of Mattoon, and Curtis A. Anderson, of Anderson & Anderson, of Danville, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Danny Zook was critically injured when a freight train owned by defendant Norfolk & Western Railroad (Railroad) struck the grain truck plaintiff was driving over a railroad crossing on October 21, 1986. Following a trial in Vermilion County, the jury returned a verdict itemizing damages totaling $1.9 million against the Railroad. The circuit court subsequently entered judgment on the verdict. The Railroad now appeals from that judgment.

Zook's original complaint alleged the following violations of duty: (1) driving and operating the train at a high and dangerous rate of speed; (2) failing to keep a lookout; (3) permitting weeds and brush to grow on the Railroad's right-of-way and obscuring the vision of motorists crossing the tracks; (4) constructing the approaches to the tracks at a grade of more than 5 degrees; (5) failing to stop or slow the train to avoid a collision; (6) operating the train at a speed too high for the conditions of the track and crossing; (7) operating the train at a speed so great as to render any warning signals or devices ineffective; and (8) failing to properly construct, maintain, and operate the equipment, track, and other property so as to cause or create an undue risk to the public. During trial, the trial court allowed amendments to the complaint which alleged the Railroad

also violated the following duties: (1) negligently maintaining the crossing and railroad tracks in an extrahazardous condition; (2) failing to adequately protect the crossing; and (3) operating the engine long end forward when it knew or should have known that such operation eliminated the engineer's view to the left and diminished the warning that the horn provided to motorists.

The accident happened in Vermilion County, immediately southwest of Tilton. The crossing is on East Ross Lane (Ross Lane). There are two "main line" tracks at the crossing; one carries rail traffic east, and the other carries rail traffic west. The tracks run in a northeast-southwest direction, and Ross Lane travels in an east-west direction. Ross Lane proceeds south from the Catlin-Tilton Road and then makes a 90-degree curve to the east toward the tracks. The angle of the road to the tracks is 41 degrees. The tracks are elevated above the road and surrounding fields. Ross Lane is gravel and traverses a steep grade on both sides of the crossing. Brush and weeds were growing along the rights-of-way of the road and railroad tracks. There is a rail yard to the northeast of the crossing.

The day was sunny, dry, bright, and warm. Zook was driving a grain truck. The train's lead engine was being operated long end forward; it could be operated in either direction. The cab of the engine is closer to one end than the other; hence, the designation long end forward or short end forward. At 12:50 p.m., Zook was traveling east on Ross Lane toward the crossing. He was familiar with the crossing. The train was traveling northeast. Thus, from the train's perspective, the truck was moving from left to right; from the truck's perspective, the train was moving from right to left.

The fireman was sitting on the left-hand side, facing forward. As the train approached the crossing, he saw a "gasoline truck" traveling east on the road traveling 20 to 25 miles per hour. The truck slowed to 5 to 10 miles per hour as it approached the grade and continued across. It did not stop. The fireman did not realize the truck would enter the tracks in front of the train until it was too late for it to stop. At that point he stood up, yelled at the engineer that they were going to hit a "gasoline truck," and took cover behind a bulkhead. He testified that the engineer put the train into an emergency stop when they hit the truck.

The train's engineer was sitting on the right-hand side of the locomotive, facing forward. No one on the train was looking for traffic except the fireman and engineer. The long end of the engine blocked the engineer's view to his left. He stated he was blowing the whistle as the train approached the crossing. The engineer never saw the truck before the collision, and he did not know it was there until

the impact. He heard the fireman say something to him which he did not understand, just as they hit the truck. He applied the brakes on impact.

Two Railroad employees at the rail yard were watching the approaching train. One employee remembered hearing the train's whistle, and the other did not. They did not see Zook turn his head to look for a train, but they did not watch him continuously.

The train's speed at and immediately before the crossing was a disputed issue. The track speed limit is 60 miles per hour. Every train has a speed tape that is similar to the "black box" found in airplanes. It records the speed (as the speedometer displays it), brake applications, throttle applications, and amps generated by the engine. It also shows distances at one-mile and at one-quarter mile intervals. The tape looks similar to an eight-track tape, and there is a special machine that interprets the information and prints it in graph form. The train crew does not have access to the speed tape. The Railroad removes the tape at random times to check compliance with railroad regulations and removes it after every accident. Testimony regarding the contents of the speed tape was contradictory, with testimony that the train was traveling 58 to 64 miles per hour at impact. We have looked at the speed tape, and it is apparent that the jury could have interpreted the speed tape as showing the train traveling at 64 miles per hour at and immediately before the crossing. The Railroad's expert stated that a four-mile-per-hour difference over a span of 20 to 30 seconds would create enough difference in distance to allow the truck to clear the tracks. A difference of one to two miles per hour would not be enough.

The horn's audibility was also at issue. Farmers in the area had never heard the train's whistle while working in their fields. Zook's expert noted that it would have been difficult for Zook to hear the whistle. Operation of the train long end forward caused the sound to pass over the train's exhaust, which was essentially a vertical wind. The exhaust caused the sound to rise, making it more difficult to hear on the road, which is lower than the elevated tracks.

Zook has many injuries. His brain was injured, resulting in a poor short-term memory, a memory loss for the period from October 1986 to January 1987, a personality change, and a weakened left side. He holds his arm close to his body, limps, and has slurred speech. Zook no longer sleeps on his left side, because lying on his left side causes him pain. He had to learn to read, write, and walk again. His spleen was removed, making him prone to infection and blood clots. Zook has severe scarring on his chest and back. His medical bills totaled $144,035.98. He can no longer shoe, break, or train horses, his professions before the accident.

The Railroad raises 11 issues on appeal.

■ First, the Railroad argues the Federal Railroad Safety Act of 1970 (Safety Act) (45 U.S.C. § 421 *et seq.* (1988)) preempts Zook's claim and evidence of excessive train speed. Pursuant to the Safety Act, Federal regulations have been promulgated which set maximum speeds for railroad tracks. The track speed at the accident site was 60 miles per hour. In *CSX Transportation, Inc. v. Easterwood* (1993), 507 U.S. 658, 676, 123 L. Ed. 2d 387, 404, 113 S. Ct. 1732, 1743-44, the Court held that the Federal speed regulations promulgated under the authority of the Safety Act preempted the plaintiff's negligence action "only insofar as it asserts that petitioner's train was traveling at an excessive speed." Since there is ample evidence, although contradicted, for the jury to find the train was exceeding 60 miles per hour, Zook's claim of excessive speed was not preempted.

■ Second, the Railroad also contends the trial court erred in allowing Zook's expert to give an opinion that the crossing was extra-hazardous, because his testimony was based on data proscribed from use at trial by section 409 of title 23 of the United States Code (23 U.S.C. § 409 (Supp. V 1993)). Section 409 prevents the discovery or use at trial of all information required by the statute to be gathered by States and railroads to improve, *inter alia*, railroad crossing safety.

We find the Railroad waived this issue by not objecting to the expert's opinion during his testimony at trial. The Railroad made a motion *in limine* before the trial to bar any use of or opinion based upon the proscribed data, *inter alia*, and it reasserted the motion before Zook's expert testified. The trial court denied the motion. When a motion *in limine* is denied, the unsuccessful movant must specifically object to the evidence when it is offered by the other party at trial. The rule is well settled that the denial of a motion *in limine* does not preserve an objection to the disputed evidence later introduced at trial. The moving party must contemporaneously object when the evidence is offered or it waives the objection. (*Cunningham v. Millers General Insurance Co.* (1992), 227 Ill. App. 3d 201, 206, 591 N.E.2d 80, 83.) In its brief, the Railroad cites portions of the expert's testimony it finds objectionable, but we find no objection there. The Railroad does not cite to the record where it made an objection to the opinion of Zook's expert based on proscribed data. We have examined the record and find only one objection that can be argued to apply to the expert's opinion testimony:

"[Zook's counsel]: What did you determine with respect to the past so far as accidents at this crossing was [*sic*] concerned?

[Railroad's counsel]: Can my objection be shown for the record?

THE COURT: And the basis?

[Railroad's counsel]: We've argued about the admissibility of any prior incidents, Your Honor.

THE COURT: All right.

[Railroad's counsel]: And I stand on that.

THE COURT: Yes. Objection noted."

We hold that the objection noted above is insufficient to preserve the issue for review.

There are several reasons the objection is insufficient. First, it was not timely. (See *Chubb/Home Insurance Cos. v. Outboard Marine Corp.* (1992), 238 Ill. App. 3d 558, 573, 606 N.E.2d 423, 433.) The opinion testimony which the Railroad cites on appeal as objectionable occurred five pages later in the transcript. Second, the objection does not refer to the issue on appeal. (See *Bradfield v. Illinois Central Gulf R.R. Co.* (1987), 115 Ill. 2d 471, 475, 505 N.E.2d 331, 333.) It refers to the admissibility of prior incidents, not to the expert's opinion. Third, the objection is not specific. (See *Baird v. Adeli* (1991), 214 Ill. App. 3d 47, 65, 573 N.E.2d 279, 289-90.) It vaguely refers to a prior argument which, we assume, was the Railroad's motion *in limine* argued before the trial court on the previous day. That argument covered a wide range of topics: whether the proffered testimony contained proscribed data, whether the prior accidents were sufficiently similar to Zook's accident, whether the accidents related to issues raised by Zook's complaint, whether the expert's opinion was disclosed in accordance with discovery rules, whether the expert could rely on trial testimony although witnesses were barred from the courtroom, and whether the expert was competent to testify about the speed tape and the crossing's approach grades. Counsel cannot expect the trial court to read his mind and know the basis for his objection. Counsel must make a specific objection and give the trial court an opportunity to rule on that specific basis.

Furthermore, the Railroad cross-examined the expert to show a violation of the statute. After and during this cross-examination, the Railroad did not object to the expert's testimony, move to strike the offensive testimony, or ask the court to direct the jury to disregard it. We hold the Railroad has waived this issue on appeal since it did not give the trial court an opportunity to rule on the objection at trial.

In addition, we note that Zook's expert specifically stated what materials he relied upon to form his opinion at trial, and those materials are not proscribed. The expert's access to proscribed materials before trial does not make his trial testimony objectionable if he has not relied upon the proscribed material to form his opinion at trial. (See *Robertson v. Union Pacific R.R. Co.* (8th Cir. 1992), 954 F.2d 1433.) The Railroad relies upon *Robertson*, which involved a

crossing accident. In that case, the trial court excluded (1) a newspaper account identifying the crossing as the most hazardous in the State; (2) a formula used by the highway department to evaluate the hazardous nature of a crossing; and (3) a highway department automobile count at the crossing. The trial court told the plaintiff's expert to disregard any information gathered by the highway department in formulating his opinion. The court held that the trial court properly excluded the formula and automobile count, since they were used by the highway department to monitor and improve highway crossing safety. The newspaper was properly excluded because it used written data compiled by the highway department. The plaintiffs would not be allowed to circumvent the statute by using indirect, secondary sources. *Robertson*, 954 F.2d at 1435.

In addition, the court held the trial court did not abuse its discretion in instructing plaintiff's expert to disregard the proscribed data. The defendant suffered no prejudice because the expert was able to form an opinion without relying upon the proscribed data. (*Robertson*, 954 F.2d at 1435.) It would be incredible to permit an instruction to a witness to ignore proscribed material and allow the opinion to be proper, but find it improper where the witness did not rely upon the proscribed information in the first instance. Thus, we find no merit in the Railroad's objection, even if it had preserved the issue for review.

■ Third, the Railroad contends the Boiler Inspection Act (45 U.S.C. § 22 *et seq.* (1988)) preempts Zook's claim that the locomotive's horn was not loud enough. When a party makes an objection, he must state specific grounds for the objection; other grounds not stated are waived on appeal. (*Moore v. Roberts* (1991), 217 Ill. App. 3d 446, 450, 577 N.E.2d 538, 541.) The Railroad failed to preserve the alleged error by not advancing the preemption argument in the trial court.

■ Fourth, the Railroad argues the trial court erred by allowing Zook to examine the engineer as an adverse party or agent under section 2—1102 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1102 (West 1992)). We agree, but find the error to be harmless. The statute states in relevant part:

> "Examination of adverse party or agent. Upon the trial of any case any party thereto or any person for whose immediate benefit the action is prosecuted or defended, or the officers, directors, managing agents or foreman of any party to the action, may be called and examined as if under cross-examination at the instance of any adverse party." (735 ILCS 5/2—1102 (West 1992).)

The Railroad correctly asserts the engineer was not a managing agent or foreman, citing *Gillespie v. Norfolk & Western Ry. Co.* (1972),

3 Ill. App. 3d 779, 278 N.E.2d 420, for support. In *Gillespie*, this court upheld the trial court's decision not to allow a train engineer to be examined as an adverse party or agent. This court stated that an engineer is not a "managing agent" or "foreman" within the meaning of the statute. *Gillespie*, 3 Ill. App. 3d at 783, 278 N.E.2d at 423.

However, this court noted in *Gillespie* that there would have been no reversible error even if the engineer had been an adverse agent under the statute, because the plaintiff elicited the same information on direct examination that he would have elicited by cross-examination. (*Gillespie*, 3 Ill. App. 3d at 784, 278 N.E.2d at 423.) *Gillespie* is instructive. In the present case, the engineer's testimony regarding the speed tape was cumulative because Zook's expert and a witness for the Railroad testified regarding the interpretation of the speed tape. In addition, the portion of the engineer's testimony that was not cumulative (regarding his eyewitness testimony about the accident) would have been elicited if a direct examination had been conducted. We hold the trial court committed harmless error by allowing Zook to examine the engineer as an adverse party or agent.

Fifth, the Railroad argues the trial court erred by finding Zook's expert qualified to interpret speed tapes. Discussion of this issue will not be published. See Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994.

■ Sixth, the Railroad asserts the trial court erred when it refused to give its instruction Nos. 8, 13, and 14, and gave Zook's instruction Nos. 19, 20, and 22. A party cannot complain of the giving or refusing of an instruction unless he makes the challenged matter the subject of an objection, both at the instructions conference and in the post-trial motion, and makes it a part of the record. *Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 509, 394 N.E.2d 1273, 1280.

We first note the Railroad waived any errors regarding its instruction No. 8 and Zook's instruction Nos. 19 and 20. Our discussion of these instructions will not be published pursuant to Supreme Court Rule 23.

■ Plaintiff's instruction No. 22 states:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

'Each rail carrier shall, consistent with rules, orders and regulations of the Federal Railroad Administration, construct, maintain and operate all of its equipment and track in this state in such a manner as to pose no undue risk to the person or property of any member of the public.'

If you decide that a party violated the statute on the occasion in

question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, a party was negligent before and at the time of the occurrence."

The Railroad contends there are two reasons why the trial court should not have given this instruction. First, there is no evidence that the Railroad violated the statute. Second, Federal law preempts any instruction relating to speed. The Railroad waived the preemption argument by not raising it in its post-trial motion. The trial court did not abuse its discretion by giving this instruction. There was ample evidence that the crossing was extrahazardous. Both parties admitted many photographs depicting the area. Many witnesses stated the visibility at and near the crossing was poor. Testimony and exhibits revealed there were weeds and brush on the rights-of-way of both the Railroad and the road. In addition, there were utilities and electrical equipment at a substation near the curve on Ross Lane. The rough gravel road was lower than the tracks. A steep incline led up to the tracks, with a steeper grade than good engineering practice allowed. The grade entirely blocks a motorist's view of approaching traffic.

In addition, Zook's expert opined that the crossing, as it existed on October 21, 1986, was an extrahazardous crossing. There were several reasons for his opinion: the angle of the intersection; the elevated, steep approaches; and distractions to visibility (vegetation and the rail yard). The rail yard distracted motorists because they had to determine whether there was a train coming from that direction. (There was a train in the rail yard when Zook's accident occurred.) The road travels at a 41-degree angle in relation to the tracks. Because of the relative speeds of the truck and train, the train would be approaching from behind the truck as it approached the crossing. In the expert's opinion, the crossing was not sufficiently protected, considering the hazards. The "crossbuck" was not sufficient protection. In his opinion, the failure to have short-arm gates and flashing lights was the proximate cause of Zook's injuries.

In addition, at a 90-degree angle of sight, Zook would have seen only a small portion of the train at impact—the only point at which he could have seen it. A driver would need to get out of the truck and look down the tracks in order to see a train before the truck was on the tracks. There was sufficient evidence to support Zook's instruction No. 22.

The Railroad asserts the trial court erred in refusing its instruction Nos. 13 and 14, pursuant to Supreme Court Rule 23. Our discussion of this issue will not be published pursuant to Supreme Court Rule 23.

■ Seventh, the Railroad argues the trial court erred in allowing Zook to amend his complaint to add three additional elements of negligence:

"8(j) Negligently maintained the crossing of Ross Lane and the railroad tracks in an extrahazardous condition.

8(k) Failed and omitted to adequately protect the crossing of the railroad tracks and Ross Lane.

\*\*\*

8(m) Operated the engine with the long end forward when it knew or in the exercise of ordinary care should have known that such operation would eliminate any visibility on the part of the engineer to the left and would diminish the warning that the whistle could provide to motorists."

The Railroad claims these amendments were not timely, were highly prejudicial, and were unsupported in fact and law.

Section 2—616 of the Code (735 ILCS 5/2—616 (West 1992)) allows liberal amendment of pleadings. The trial court's determination of whether to allow or deny an amendment of a pleading is discretionary and will not be reversed absent an abuse of discretion. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 416, 615 N.E.2d 736, 742.) In Illinois, there is a liberal policy of allowing amendments to a complaint to conform to proof adduced at trial, but the materiality of such amendments must be clear and apparent. (*Moore*, 217 Ill. App. 3d at 454, 557 N.E.2d at 544.) Amendments which result in changes in legal theories are permitted and have been held not to create prejudice which warrants a denial of the proposed amendment. *Giacalone v. Chicago Park District* (1992), 231 Ill. App. 3d 639, 644-45, 596 N.E.2d 731, 734.

We hold the trial court did not abuse its discretion when it allowed these amendments. There was sufficient evidence to support them. That evidence was the same as, or inextricably intertwined with, evidence offered at trial to support Zook's complaint; therefore, the Railroad could not have been surprised at trial.

■ Eighth, the Railroad relies on *Brennan v. Wisconsin Central Ltd.* (1992), 227 Ill. App. 3d 1070, 591 N.E.2d 494, for the proposition that the orientation of the engine long end forward is not negligence as a matter of law, and the introduction of the issue was reversible error. The Railroad's reliance is misplaced. In *Brennan*, the court upheld a directed verdict for the railroad regarding the issue of whether the train crew kept a proper lookout. The engine was being operated long end forward. When the plaintiff's car passed the "crossbuck," the conductor realized it would not stop and ordered the engineer to apply the emergency brake. The road in question crossed the tracks at a 90-degree angle. The court stated:

"Although the record reflects that the view is better when the engine is run short end forward, it lacks evidence that the view is inadequate when run long end forward. Such evidence is insufficient to establish that [the train crew] breached their duty to maintain a proper lookout." (*Brennan*, 227 Ill. App. 3d at 1083-84, 591 N.E.2d at 504.)

The court noted that the essential question in determining if the train crew kept a proper lookout is whether they failed to do that which a reasonable person would under the circumstances. *Brennan*, 227 Ill. App. 3d at 1084, 591 N.E.2d at 504.

In the present case, there is evidence that the operation of the train long end forward provided an inadequate view. There is also a question of whether the fireman acted as a reasonable person under the circumstances. Furthermore, there was an issue of whether the long end forward configuration diminished the horn's audibility. Thus, *Brennan* is inapposite.

■ Ninth, the Railroad asserts the trial court abused its discretion by not allowing it to add the following affirmative defense to its answer:

"[The Railroad] had no power, authority or duty to correct the angle at which Ross Lane approached and crossed its tracks; the exclusive power and authority to orient the approach of the Ross Lane road pavement in proximity to N. & W.'s crossing therewith at all material times was and is the sole and exclusive responsibility of the governmental unit with maintenance jurisdiction over said Ross Lane; the evidence in this cause establishes conclusively that said maintenance responsibility for said Ross Lane crossing vicinity was at all material times vested in Catlin Township acting by and through the Catlin Township Road Commissioner over whom this defendant had no authority or control."

The Railroad claims that without the amendment and an instruction, the jury could have concluded the Railroad was responsible for the slope and angle of the crossing.

Although the trial court did not strictly follow the proper procedures, apparently it denied the affirmative defense because of Zook's motion to strike the affirmative defense. There are two procedures implicated in this issue: an amendment of a pleading and a motion to strike part of a pleading. Technically, the trial court would need to allow the amendment before it could grant the motion to strike. Failure to follow this procedure was harmless, and the affirmative defense was properly stricken.

It is within the sound discretion of the trial court to refuse an amendment to the answer when it seeks to interpose a defense not before pleaded. (*Bazzell-Phillips & Associates, Inc. v. Cole Hospital,*

*Inc.* (1977), 54 Ill. App. 3d 188, 190, 369 N.E.2d 337, 339.) There are four factors used to determine whether the trial court abused its discretion by allowing or denying the amendment of a pleading: (1) whether the proposed amendment will cure the defective pleading, (2) whether the proposed amendment will surprise or prejudice the opposing party, (3) whether the proposed amendment is timely filed, and (4) whether the movant had previous opportunity to amend. The overriding concerns, however, are justness and reasonableness. (*Hoover*, 155 Ill. 2d at 416, 615 N.E.2d at 742.) When reviewing a ruling regarding a motion to strike, appellate courts do not give deference to a trial court's judgment, but instead review the matter *de novo*. See *Toombs v. City of Champaign* (1993), 245 Ill. App. 3d 580, 583, 615 N.E.2d 50, 51.

Since the trial court did not deny the affirmative defense, but struck it as insufficient as a matter of law, we review the trial court's decision under a *de novo* standard. An affirmative defense is one which gives color to the claim of the opposing party and then asserts new matter by which the apparent right is defeated. (*Vanlandingham v. Ivanow* (1993), 246 Ill. App. 3d 348, 357, 615 N.E.2d 1361, 1367.) The Railroad's alleged affirmative defense would not defeat Zook's cause of action, even if true. It would merely rebut a portion of Zook's evidence that the crossing was extrahazardous. Therefore, it was properly stricken.

■ Tenth, the Railroad asserts that damages awarded to Zook are not supported by the evidence and bear no reasonable relationship to Zook's loss. Our discussion of this issue will not be published pursuant to Supreme Court Rule 23.

We find the jury's award of $150,000, when there were only $144,035.98 in medical bills, to be against the manifest weight of evidence. (See *Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, 1046, 495 N.E.2d 141, 147.) Accordingly, we direct the trial court to reduce the damages by $5,964.02.

■ Eleventh, the Railroad asserts the jury's verdict for Zook, without apportioning any fault to Zook, was against the manifest weight of evidence. The Railroad points out that Zook was familiar with the crossing and knew the truck bed partially obstructed his view; and he failed to stop his truck, failed to look for an approaching train, and failed to heed its warnings. The defendant has the burden of proving the plaintiff's comparative negligence. (*Casey v. Baseden* (1986), 111 Ill. 2d 341, 347, 490 N.E.2d 4, 6.) On review of a comparative negligence case, the proper standard applied is whether the decision is against the manifest weight of the evidence. (*Seaman v. Wallace* (1990), 204 Ill. App. 3d 619, 636, 561 N.E.2d 1324, 1336.) A

verdict is against the manifest weight of the evidence when the opposite conclusion is clearly evident or when the findings of the jury are unreasonable, arbitrary, and not based upon any of the evidence. (*Maple v. Gustafson* (1992), 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13.) A plaintiff is contributorily negligent when he acts without that degree of care which a reasonably prudent person would have used for his own safety under like circumstances, and which action is the proximate cause of his injury. *Bizarro v. Ziegler* (1993), 254 Ill. App. 3d 626, 630, 627 N.E.2d 122, 125.

Under the facts as related throughout this opinion, we cannot say that the jury's decision was against the manifest weight of the evidence. The jury could easily have decided that Zook could not have seen the train even if he had looked; that he could not have heard the train; and that it was not reasonable for a driver not having any indication of an approaching train to stop his truck, get out, and look down the tracks.

Affirmed in part; reversed in part, and remanded with directions.

GREEN and STEIGMANN, JJ., concur.