2022 IL App (1st) 210874-U

FIRST DISTRICT,
FIRST DIVISION
June 27, 2022

No. 1-21-0874

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| NARE MEACHAM SQUARE, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 2020 M1 706285 |
| | ) | |
| FALAFILL SC, LLC, and UNKNOWN | ) | |
| OCCUPANTS, | ) | Honorable |
| | ) | Preston Jones, Jr., |
| | ) | Judge Presiding. |
| Defendants-Appellants. | ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) In commercial eviction action, trial court did not abuse its discretion in granting plaintiff's motion to continue the trial and in allowing plaintiff to call witnesses not disclosed prior to trial; surprise to defendant was minimal and there was no evidence that plaintiff acted in bad faith. (2) Trial court's denial of defendant's motion for directed verdict was not against the manifest weight of the evidence. (3) Trial court did not err in dismissing defendant's affirmative defense of "improper motivation." (4) Defendant waived objection to trial court's order barring mention of the COVID-19 pandemic at trial. (5) Use and occupancy order requiring defendant to pay the full amount due under the lease was not improper.

¶ 2        Plaintiff NARE Meacham Square, LLC, filed an action to evict defendant Falafill SC, LLC, for nonpayment of rent. Following a bench trial, the trial court entered an order granting possession of the subject premises to plaintiff. Defendant appeals, arguing that the trial court erred (1) in granting plaintiff's oral motion to continue on the day of trial, and thereafter allowing plaintiff to call witnesses not disclosed prior to trial; (2) in entering judgment for plaintiff where plaintiff failed to prove by a preponderance of the evidence that defendant received plaintiff's 10-day notice of eviction; (3) in dismissing defendant's affirmative defense of improper motivation; (4) in barring mention of the COVID-19 pandemic at trial; (5) in granting plaintiff $14,063.18 a month in use and occupancy. For the reasons that follow, we affirm.

¶ 3                                        BACKGROUND

¶ 4        In August 2017, defendant leased premises from plaintiff to operate a Mediterranean restaurant at a shopping center at 1428 North Meacham Road in Schaumburg, Illinois. Due to the COVID-19 pandemic, the restaurant was closed from March 2020 until "late summer" 2020. Although the lease provided for monthly rent in the amount of $14,063.18, from March to October 2020, defendant only paid a total of $40,000 in rent.

¶ 5        On October 27, 2020, plaintiff filed an eviction action against defendant, alleging that defendant was in arrears on rent from March 1 to October 10, 2020 in the amount of $95,469.71. Plaintiff further alleged that defendant was served with a 10-day notice of eviction on October 3, 2020, and failed to pay the full amount due within 10 days. A copy of the 10-day notice signed by property manager Angela Moreno and an affidavit of service stating that Moreno sent the notice to defendant on September 30 by certified mail was attached to the complaint. A United States Postal Service (USPS) certified mail receipt ("green card") was also attached to the

complaint, indicating that mail was delivered to defendant on October 3, and the green card was received and signed by "Joneal."

¶ 6        In response to an interrogatory requesting the disclosure of anyone with knowledge of the lease and complaint allegations, plaintiff only identified Martha Coronado, its director of property management. Defendant also sought disclosure of plaintiff's trial witnesses pursuant to Supreme Court Rule 213(f). Plaintiff objected to this request as being premature because a trial date had not been set, but did not supplement its discovery responses before discovery closed on March 2.

¶ 7        On March 31, defendant filed an affirmative defense of "improper motivation." Defendant alleged it was initially allowed rent deferrals (from April to August 2020), but immediate payment of all past-due rent was later demanded in order to evict defendant and rent the premises to a nationwide restaurant chain. Defendant asserted that this action was "unconscionable" in light of "the Covid-19 Pandemic and the government imposed restrictions and limitations on restaurant operations."

¶ 8        Plaintiff moved to dismiss this affirmative defense as "not germane" to the issue of possession. After the trial court granted plaintiff's motion on April 27, plaintiff filed a motion *in limine* to bar defendant from presenting evidence at trial regarding (1) its own economic hardship or (2) the COVID-19 pandemic and the restrictions placed on restaurants by Governor J.B. Pritzker's executive orders. The trial court granted the motion *in limine* but indicated that defendant was free to present "proposed language" for the court to consider "concerning the scope of permitted evidence, argument, questions, or testimony pertaining to COVID-19."

¶ 9　　　　On May 18, plaintiff filed a list of trial witnesses that identified only Martha Coronado but reserved "the right to call other witnesses in rebuttal to any claims made by the Defendants or otherwise."

¶ 10　　　　At the June 1 pretrial conference (held the day before the trial was set to commence), defendant asked the court to reconsider the dismissal of its "improper motivation" defense based on case law barring retaliatory eviction in a residential context. Plaintiff responded that in a commercial setting, a landlord is not barred from evicting a tenant who is unable to pay rent (*i.e.*, defendant) in favor of a new tenant who is able to pay rent.

¶ 11　　　　The trial court declined to reconsider its ruling, stating:

"Counsel, I agree with you that it is possible to have an affirmative defense *** [of] improper motivation or retaliation or something along those lines in a commercial eviction case. *** I do not believe that it rises to that level in this case.

*** 

The actions of the plaintiff *** can be described as hardball, business hardball. It might even be described as unkind behavior. But it does not rise to the level where a jury should hear it and be able to make a determination on possession based on it. I think it is an extraordinary danger that if a jury was allowed to hear this affirmative defense, they would make their decision based on not liking the plaintiff ***."

In light of the court's ruling, defendant decided that it was "no longer *** necessary" to present proposed language as to the scope of permitted evidence on the COVID-19 pandemic. Defendant also withdrew its jury demand.

¶ 12         On June 2, the parties appeared for the scheduled bench trial.[1] Before any witnesses were called, plaintiff submitted its trial exhibits to the court, including the green card attached to the 10-day eviction notice as proof of receipt. Defendant objected that plaintiff could not authenticate the green card because it was not signed by anyone affiliated with defendant. Plaintiff requested a continuance in order to locate an authentication witness. Defendant requested a directed finding in its favor because plaintiff could not prove that defendant received its 10-day notice. The trial court denied the motion for a directed finding and continued the trial to June 11.

¶ 13         On June 3, defendant was served with a Rule 237(b) notice compelling the appearance of several witnesses at trial—Ghaith Nahlawi, Ayad "Eddie" Nahlawi (henceforth Eddie), Carrie Johnsen, Kathy Scheublein, and Antonia Acosta—as well as "the original or a copy of the Landlord's 10 Day Notice dated September 30, 2020 received by Defendants." Defendant moved to quash the Rule 237(b) notice, arguing that none of the named individuals was "an officer, director, or employee of a party" and therefore could not be compelled to appear under Rule 237(b). Ill. S. Ct. R. 237(b) (eff. July 1, 2005). Defendant also argued that the Rule 237(b) notice was untimely and that plaintiff "is clearly attempting to obtain additional discovery, after the commencement of the trial, that it could have sought months ago."

¶ 14         On June 10, plaintiff filed an emergency motion to allow USPS carrier Jackie O'Neal to testify via Zoom, alleging that she delivered the 10-day notice to defendant and signed the green card. On June 11, the trial court ruled that O'Neal could testify, but continued the trial so defendant could depose O'Neal before she testified. Plaintiff also filed an amended list of witnesses on June 11, stating that it would call Martha Coronado, Angela Moreno, and Jackie

---

[1] The record contains no transcript of the June 2 proceedings, but the parties and the court extensively reference the events of June 2 during the June 11 proceedings, which are in the record.

O'Neal and that it "may" call Ghaith Nahlawi, Eddie Nahlawi, Carrie Johnsen, Kathy Scheublein, Antonia Acosta, and unnamed "other witnesses."

¶ 15     Defendant moved to strike plaintiff's amended witness list as untimely and to bar plaintiff from calling any witnesses other than Coronado. On June 17, the trial court denied both motions, stating: "It's a commercial eviction case. The range of topics is not that wide, right? *** [Y]ou know all the players, you know what these people are going to say. I don't think there's any surprise."

¶ 16     When trial began on June 21, O'Neal testified that she was a USPS carrier for the Arlington Heights Post Office and that Suite 203 of 171 West Wing Street (defendant's business address) had been on her postal route for the past several years. When delivering certified mail to that address, O'Neal customarily knocked on the suite door and explained to the recipient that they could sign the scanner, or, if they were uncomfortable doing so because of COVID-19, she would sign it in their presence. O'Neal had delivered certified mail to "a young lady" in Suite 203 on several occasions. If no one was there, O'Neal would place a notice in the office mailbox "so they [could] come and pick it up" and would write "NL" (for "notice left") on the certified mail. If it was a weekend, O'Neal might write "BC" (for "business closed") on the certified mail and attempt to deliver it again on Monday. She would not sign the green card or leave the certified mail at the office if no one was there to receive it and witness her signature.

¶ 17     O'Neal had no specific recollection of delivering certified mail to Suite 203 on Saturday, October 3, 2020. But since the green card bore her signature and was dated October 3, 2020, she believes that she delivered the mail on October 3, 2020 to the "young lady in the office" to whom she had previously delivered certified mail.

¶ 18    Coronado testified that in September 2020, defendant owed $71,363.82 in unpaid rent. She discussed the situation with Moreno and decided to issue defendant a 10-day notice of eviction. Moreno typed up the notice, signed it, and placed it in the mailbox on September 30, 2020. Coronado acknowledged that the lease provided that notices were to be sent to Eddie Nahlawi. She did not know who signed the green card, but it was not Eddie.

¶ 19    Moreno testified that on September 30, she called Eddie and informed him that he would be receiving a notice of default. That evening, she dropped a certified mail notice in the mailbox around the corner from her office. On October 14, Moreno had a telephone conversation with Eddie in which he acknowledged receipt of the default notice and said he disagreed with the amount of overdue rent reflected on the notice. He asked Moreno to send him a copy of the tenant ledger, which she did by email later that day. A few days later, Eddie emailed Moreno and her "boss," "asking for some help with the rent" and informing them that he had sent them $10,000 worth of checks. Moreno had no further contact with Eddie.

¶ 20    At the close of plaintiff's case, defendant moved for a directed finding in its favor. Defendant argued that plaintiff had not proved receipt of the 10-day notice because O'Neal had no independent recollection of delivering the notice and Moreno's testimony that Eddie admitted receipt was hearsay. The trial court denied the motion.

¶ 21    Antonia Acosta testified that she works for Food Works Hospitality Group, a management company. Her job responsibilities included "do[ing] the payrolls" for Falafill SC. She, Eddie and Johnsen all worked out of Suite 203, but on a day-to-day basis, she was the only one there 95% of the time, and to the best of her knowledge she was the only one who signed for certified mail. She never worked on weekends, never came to the office on weekends for any purpose, and was not at the office on Saturday, October 3, 2022. She recognized O'Neal as a

postal carrier who delivered certified mail. She always signed the green card herself instead of having O'Neal sign it.

¶ 22 Eddie testified that he "run[s]" Falafill "for [his] brother." In late summer 2020, he was in contact with Moreno about payment of rent, but he had no communications with her after October 1, 2020. He denied talking to her about the 10-day notice or telling her that he had received a copy of it. He first saw the 10-day notice near the end of October 2020 "when the complaint in this case was served."

¶ 23 Eddie also testified that no one was in Suite 203 on Saturday, October 3, 2020, and Acosta does not work on Saturdays. On June 11, 2021, Eddie asked Peter Horak, an IT professional who services the suite, to "find out if somebody was in the office" on October 3, 2020. According to Horak, there was "[z]ero use of the server that day," and Acosta "can't work without her computer."

¶ 24 At the end of the trial, plaintiff was granted possession of the premises. Relying on the "credible" testimony of O'Neal, who "had no dog in this fight," the trial court held: "[B]ased on a preponderance of evidence, I believe a 10-day notice was served on a representative of [defendant] at that location on October 3rd so that the requirement of the 10-day notice has been satisfied."

¶ 25          ANALYSIS

¶ 26 Initially, we observe that defendant's brief contains no citations to the record on appeal in violation of Illinois Supreme Court Rule 341. Ill. S. Ct. R. 341(h)(6), (h)(7) (eff. Oct 1, 2020) (statement of facts must contain "appropriate reference to the pages of the record on appeal"; argument section must set forth the appellant's contentions "with citation of *** the pages of the record relied on"). " 'A party's failure to comply with Rule 341 is grounds for disregarding its

arguments on appeal based on an unreferenced statement of facts.' " *Lopez v. Northwestern Memorial Hospital*, 375 Ill. App. 3d 637, 639 fn.1 (2007) (quoting *Jeffrey M. Goldberg & Associates, Ltd. v. Collins Tuttle & Co.*, 264 Ill. App. 3d 878, 886 (1994)). However, "Supreme Court Rule 341 states an admonition to the parties rather than a jurisdictional limitation on the court." *In re Marriage of Souleles*, 111 Ill. App. 3d 865, 869 (1982). Since we have the benefit of the record citations provided in plaintiff's brief, we will consider this appeal on the merits.

¶ 27                              Plaintiff's Lack of Preparation for Trial

¶ 28        Defendant argues that the trial court abused its discretion (1) in continuing the trial, (2) in denying defendant's motion to bar plaintiff from calling witnesses not disclosed prior to the original trial date, and (3) in denying defendant's motion to quash plaintiff's untimely 237(b) notice to produce.

¶ 29        There is no absolute right to a continuance, and a continuance requested on the day of trial "requires that an especially persuasive reason be given by the moving party because of the potential inconvenience to the witnesses, the parties and the court." *In re Marriage of Gallagher*, 256 Ill. App. 3d 439, 442 (1993). The trial court has broad discretion in granting or denying a motion for continuance, and "in the absence of a manifest abuse of that discretion, its judgment will not be disturbed on appeal." *Feder v. Hiera*, 85 Ill. App. 3d 1001, 1002 (1980). In determining whether a manifest abuse of discretion has occurred, we "must balance the prompt disposition of the case with the equally compelling interest in obtaining justice." *O'Neill v. Brown*, 242 Ill. App. 3d 334, 343 (1993).

¶ 30        Plaintiff argues that a continuance was appropriate because defendant "ambushed" plaintiff by objecting to admission of the green card on the day of trial. In an eviction trial, plaintiff has the burden of proving its right to possession and strict compliance with the statutory

notice requirements. *Eckel v. MacNeal*, 256 Ill. App. 3d 292, 296 (1993). Plaintiff should have anticipated its burden to prove delivery of its 10-day notice, which is an essential element of its claim, and being unprepared to do so reflects a lack of due diligence. See *Waltz v. Schlattman*, 81 Ill. App. 3d 971, 975 (1980) ("Trial preparation requires an attorney to anticipate problems of proof and provide for their possibility"). We reject plaintiff's assertion that lack of notice should have been raised as an affirmative defense. An affirmative defense does not negate the elements of the plaintiff's cause of action but asserts new matter by which the plaintiff's apparent right to recovery is defeated. *Northbrook Bank & Trust Co. v. 2120 Div. LLC*, 2015 IL App (1st) 133426, ¶ 14.

¶ 31    It is well established that the appellant has the burden of presenting a sufficiently complete record to support its claims of error on appeal. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). "Absent a sufficient record, a reviewing court presumes that the trial court's order conformed to the law and had a sufficient factual basis." *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 9. Since the record does not contain a transcript of the June 2 proceedings, we have no basis upon which to evaluate the merits of any errors that allegedly occurred on that date. Therefore, defendant cannot overcome the presumption that that the trial court did not abuse its discretion in granting a 19-day continuance of the trial.

¶ 32    Defendant also argues that the trial court erred in denying its motion to bar witnesses not disclosed prior to the originally scheduled trial date. Supreme Court Rule 213 provides that upon written interrogatory, a party must furnish the identities of witnesses who will testify at trial. Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2018); see *Zickuhr v. Ericsson, Inc.*, 2011 IL App (1st) 103430, ¶ 79 ("Rule 213 disclosure requirements are mandatory and subject to strict compliance by the

parties"). In determining whether exclusion of witnesses is a proper sanction for nondisclosure, the court must consider "(1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness." *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 110 (2004). Imposition of sanctions lies within the trial court's sound discretion and will not be reversed absent an abuse of discretion. *Id.*

¶ 33     With respect to the element of surprise, the trial court stated: "It's a commercial eviction case. The range of topics is not that wide, right? *** [Y]ou know all the players, you know what these people are going to say. I don't think there's any surprise." In addition, the trial court reduced any potential prejudice to defendant by continuing the trial so defendant could depose O'Neal before she testified. Under these circumstances, the trial court did not abuse its discretion by failing to sanction plaintiff for the untimely disclosure of witnesses.

¶ 34     Concerning the denial of defendant's motion to quash plaintiff's Rule 237(b) notice to produce, Rule 237(b) provides that the trial appearance of "a person who at the time of trial or other evidentiary hearing is an officer, director, or employee of a party may be required by serving the party with a notice designating the person who is required to appear." Ill. S. Ct. R. 237(b) (eff. July 1, 2005); see *White v. Garlock Sealing Technologies, LLC*, 398 Ill. App. 3d 610, 620-21, 627 (2010) (Rule 237(b) does not apply to persons who are not officers, directors, or employees of a party even if they are under the party's control or have a "substantial relationship" with that party). Additionally, the notice "may require the production *** [of] documents or tangible things *previously produced during discovery*" (emphasis added), although the committee comments clarify that "Rule 237(b) is not a discovery option to be used on the eve

of trial in lieu of a timely request for the production of documents, objects and tangible things pursuant to Rule 214." Ill. S. Ct. R. 237, Committee Comments (rev. June 1, 1995).

¶ 35    Defendant argues that none of the witnesses plaintiff sought to compel were officers, directors, or employees of defendant and that requesting defendant's copy of the 10-day notice was improper because it was not previously produced in discovery. Since none of the challenged witnesses testified on plaintiff's behalf and defendant was not sanctioned for failing to produce its copy of the 10-day notice, these alleged errors were harmless. See *Campen v. Executive House Hotel, Inc.*, 105 Ill. App. 3d 576, 594 (1982) (harmless error does not necessitate reversal).

¶ 36                    Ten-Day Notice of Eviction

¶ 37    Defendant's motion for a directed finding was based on plaintiff's alleged failure to prove that defendant received its 10-day notice of eviction. In ruling on a motion for directed finding in a nonjury case, the trial court (1) determines as a matter of law whether plaintiff has made a *prima facie* case by presenting "some evidence" on every element of its cause of action and (2) if so, weighs the totality of the evidence, including the credibility of witnesses, to determine whether defendant is entitled to judgment. 735 ILCS 5/2-1110 (West 2020); *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 39. We will not reverse the trial court's ruling unless it is against the manifest weight of the evidence (*id*.), keeping in mind that we give "great deference" to the trial court's credibility determinations because the trial court "is in a superior position to observe witnesses, judge their credibility, and determine the weight their testimony should receive." *Vician v. Vician*, 2016 IL App (2d) 160022, ¶¶ 27, 29.

¶ 38    In denying defendant's motion for directed finding, the trial court properly relied on O'Neal's testimony, stating:

> "Ms. O'Neal testified she *** worked on that very route for three to four years. She, on many occasions, went to that location, including on Saturdays. She went to the business suites on the second floor. She would knock, and if no one was there, she had a procedure for what she would do if no one was there. In this particular case, dealing with that particular suite of Falafill, LLC, she had dealt with the woman who she presented with the COVID-related exceptions *** to the green card signature.
>
> ***
>
> And while defense is correct, she did not have independent recollection of that encounter, her signature and her procedure and her knowledge of the suite where Falafill was satisfies the court that the green card was served on Falafill and that the person at the business chose to have Ms. O'Neal sign the green card, as to not to expose themselves to COVID."

¶ 39    Defendant additionally contends that plaintiff did not prove receipt of its 10-day notice by a preponderance of the evidence. According to defendant, O'Neal's testimony was "not conclusive" because she did not identify to whom she allegedly gave the certified mail, whereas Acosta and Eddie testified unequivocally that they were not in the office on Saturdays. The trial court found that O'Neal was more credible than defendant's witnesses, and we will not substitute our judgment for that of the trial court.

¶ 40                          Improper Motivation

¶ 41    Defendant argues that the trial court erred in dismissing its affirmative defense of "improper motivation" and in denying its oral motion for reconsideration. We review the

dismissal of an affirmative defense *de novo*. *Zook v. Norfolk & Western Railway Co.*, 268 Ill. App. 3d 157, 169 (1994).

¶ 42     Because defendant cites no legal authority on this issue in violation of Supreme Court Rule 341 (Ill. S. Ct. R. 341(h)(7) (eff. Oct 1, 2020)), the argument is forfeited. See *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38 (declining to address issues where appellant did not cite relevant legal authority). Even if we were to overlook defendant's forfeiture, the cases upon which defendant relied in the trial court do not warrant a different result. *American Management Consultant, LLC v. Carter*, 392 Ill. App. 3d 39, 54 (2009); *Wood v. Wood*, 284 Ill. App. 3d 718, 725 (1996).

¶ 43     "[C]ircumstances may arise where a landlord's action in seeking to evict a tenant is so invidiously motivated and so contravenes public policy that the court could not implement the eviction." *Carter*, 392 Ill. App. 3d at 54 (explaining that the defense of retaliatory eviction is not limited to retaliation against whistleblowers as proscribed by the Retaliatory Eviction Act (765 ILCS 720/1 (West 2006))). In *Wood*, a wife obtained an emergency order of protection against her husband granting her sole possession of the marital home. *Wood*, 284 Ill. App. 3d at 721. We stated in *dicta* that it "might" constitute retaliatory eviction if her husband's parents, who owned the marital home, sought to evict her. *Id.* at 725-26.

¶ 44     We agree with the trial court that the facts alleged by defendant, even if true, do not defeat plaintiff's claim as a matter of law. See *Zook*, 268 Ill. App. 3d at 169 (dismissal of affirmative defense was proper where the facts alleged, if true, did not defeat plaintiff's claim). Although unfortunate, defendant's status as a commercial tenant unable to pay its rent is not comparable to a whistleblower (see 765 ILCS 720/1 (West 2006)) or a spouse seeking protection against her abuser (see *Wood*, 284 Ill. App. 3d at 725-26). See *Carter*, 392 Ill. App. 3d at 55

(trial court did not err in rejecting tenant's defense of retaliatory eviction where the record showed defendant's nonpayment of rent was a valid basis for the eviction). Plaintiff's eviction action is not "so insidiously motivated" that we "could not implement the eviction" (*id.* at 54) for reasons of public policy.

¶ 45                          Barring Mention of COVID-19 Pandemic at Trial

¶ 46          Defendant argues that the trial court abused its discretion in granting plaintiff's motion *in limine* to bar mention of the COVID-19 pandemic at trial. See *Swick v. Liautaud*, 169 Ill. 2d 504, 521 (1996) (trial court ruling on motion *in limine* is reviewed for abuse of discretion). Defendant cites no legal authority on this argument, which is therefore forfeited. *Petrik*, 2012 IL App (2d) 110495, ¶ 38. In addition, defendant waived any objection to the trial court's ruling at the June 1 pretrial conference by asserting that it was "no longer *** necessary" to prepare proposed language regarding the scope of allowed evidence on the COVID-19 pandemic in light of the court's dismissal of its "improper motivation" defense. *Direct Auto Insurance Co. v. Bahena*, 2019 IL App (1st) 172918, ¶ 36 (under the invited-error doctrine, when a party acquiesces in the trial court's evidentiary ruling, it cannot challenge the ruling on appeal).

¶ 47                                   Use and Occupancy

¶ 48          Defendant argues that the trial court erred in ordering defendant to pay use and occupancy under section 201 of the Eviction Act (735 ILCS 5/9-201 (West 2018)), which permits a party who brings an eviction action to recover "a fair and reasonable satisfaction for the use and occupation" of the land during the pendency of the action. 735 ILCS 5/9-201 (West 2018); see *People ex rel. Department of Transportation v. Cook Development Co.*, 274 Ill. App. 3d 175, 180 (1995) (lessee's obligation to pay rent continues while eviction action is ongoing).

¶ 49        On November 17, 2020, plaintiff requested that defendant pay use and occupancy of $14,063.18 per month, *i.e.*, the full amount due under the lease. Defendant responded that this amount was unreasonable because the restaurant was closed for several months due to the COVID-19 pandemic and, upon reopening, its operations were curtailed and its customer base reduced. Defendant proposed that it pay $1800 per month, which it alleged was 20% of its current revenue stream, but the trial court ordered defendant to pay the full amount due under the lease.

¶ 50        Defendant filed a motion to reconsider in which, for the first time, it set forth its gross revenue for each month during the pendency of the lawsuit, as evidenced by copies of its sale journal reports from October 2020 to February 2021 and its Illinois Department of Revenue Sales and Use Tax and E911 Surcharge Returns for those months. Defendant's monthly gross revenue ranged from $15,176.74 to $17,719.00 before accounting for wages, food costs, utilities, insurance, and other expenses. In light of these figures, defendant argued it was unreasonable to expect it to pay $14,063.18 per month. Defendant also asserted that "for a few months" in spring and summer 2020, plaintiff allowed it a "Covid Base Rent Deferral" of $9146.67, meaning that defendant only had to pay approximately $5000 in rent per month. Defendant therefore argued that it should only be required to pay $5000 in monthly use and occupancy. The trial court denied defendant's motion to reconsider "for the reasons stated in open Court."[2]

¶ 51        "In the absence of evidence of reasonable value for the use and occupancy of the premises it is presumed that that the proper compensation is the amount of rent fixed in the lease." *In re Schnabel*, 612 F.2d 315, 318 (7th Cir. 1980). In its initial response to plaintiff's use and occupancy motion, defendant asserted that the amount due under the lease was unreasonable

---

[2] The trial court's order is not date-stamped, and no transcript of the hearing is in the record.

but did not provide any evidence of reasonable value. We find no error in the trial court's January 6, 2021 order granting use and occupancy.

¶ 52    Defendant argues that the trial court erred in denying its motion for reconsideration because the uncontroverted evidence showed the full amount of rent due under the lease was unreasonably high compared to defendant's revenue. The decision to grant or deny a motion for reconsideration lies within the trial court's discretion and will not be reversed absent an abuse of that discretion. *Chelkova v. Southland Corp.*, 331 Ill. App. 3d 716, 729 (2002). The purpose of such a motion is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's application of the law. *Id.* "Newly discovered evidence" is evidence that was not available prior to the hearing. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 71. "In the absence of a reasonable explanation regarding why the evidence was not available at the time of the original hearing, the circuit court is under no obligation to consider it." (Internal quotation marks omitted.) *Id.*; see also *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 65 (2001) ("Trial courts should not allow a litigant to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling." (Internal quotation marks omitted.)).

¶ 53    Here, the evidence presented in defendant's motion to reconsider was available at the time of the original hearing, and defendant offered no explanation for failing to present it at that time. Additionally, the record does not include a transcript of the original hearing or a bystander's report. Without an adequate report of proceedings showing the basis for the trial court's decision, we presume its denial of defendant's motion to reconsider was appropriate. *Foutch*, 99 Ill. 2d at 391.

¶ 54                                    CONCLUSION

¶ 55        For the foregoing reasons, we affirm the judgment of the trial court.

¶ 56        Affirmed.